WALTER S. WASHINGTON, as Ancillary Administrator of MAR-
GARET HUNTER, Deceased, Respondent, *v.* THE BANK FÓR
SAVINGS IN THE CITY OF NEW YORK, Appellant.

EVIDENCE — WHEN TESTIMONY AS TO DECLARATION OF DECEDENT THAT
SHE NEVER HAD ANY CHILDREN NOT WITHIN RULE EXCLUDING HEARSAY
TESTIMONY. In an action brought by an administrator against a savings
bank to recover moneys deposited by his intestate in trust for two sons,
named in the accounts and pass books representing the accounts, upon the
ground that the names were fictitious and that the deposits were intended
for the sole benefit of decedent and that she was the sole owner of the
moneys so deposited at the time of her death, testimony of witnesses, who
knew her in her lifetime and who had frequent conversations with her
in regard to her family history, is admissible to prove her statements and
declarations, made to them at various times, that she had no children and
no family and no relatives, and that she never had any children; since
such testimony, although hearsay, is within the exception that such
declarations and statements are admissible as to matters of pedigree,
including therein not only descent and relationship, but also the facts of
birth, marriage and death, and when these events happened or whether
they did, or did not, take place, and is, therefore, admissible upon the
issue whether, in fact, any children had ever been born to the decedent.

*Washington* v. *Bank for Savings*, 65 App. Div. 338, affirmed.

(Argued April 14, 1902; decided May 13, 1902.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the first judicial department, entered
November 20, 1901, affirming a judgment in favor of plain-
tiff entered upon a verdict and an order denying a motion for
a new trial.

The nature of the action and the facts, so far as material,
are stated in the opinion.

*W. W. Thompson* for appellant. If Margaret Hunter had
sons, Thomas and John, when the accounts were opened, and
they are now alive, the moneys in question belong to them;
if they are dead, the moneys belong to their personal repre-
sentatives. And the fact that they may have died after the
accounts were opened, but before their mother, makes no
difference. (*Bishop* v. *Seamen's Bank*, 33 App. Div. 181.)

If Margaret Hunter had sons and the accounts are valid express trusts, then the plaintiff has no legal title to them, and has no right to maintain an action to recover them, for if the trusts are already executed the moneys now belong to the beneficiaries or their personal representatives, and if unexecuted, the trusts have devolved upon the Supreme Court. (*Boone* v. *C. S. Bank*, 84 N. Y. 83; *Schluter* v. *B. S. Bank*, 117 N. Y. 125; *Matter of Tousey*, 2 App. Div. 569; *Matter of Carpenter*, 131 N. Y. 86; *Hirsch* v. *Auer*, 146 N. Y. 13; *Wetmore* v. *Wetmore*, 44 App. Div. 52.) The burden rested on plaintiff to prove by legal evidence that Margaret Hunter never had sons Thomas and John. (Lawson's Law of Pres. Ev. [2d ed.] 332, 336; *Harrison* v. *Totten*, 53 App. Div. 180; *Cunningham* v. *Davenport*, 147 N. Y. 47; *Bishop* v. *S. Bank*, 33 App. Div. 184; *Matter of Mueller*, 15 App. Div. 69.) If the declaration of Margaret Hunter that she never had children relates to a question of pedigree, still it is not admissible in evidence in this action, because it is not a pedigree case, but is simply an action for debt. (*Young* v. *Shulenberg*, 165 N. Y. 388; 1 Greenl. on Ev. [16th ed.] 203; 1 Taylor on Ev. [8th Eng. ed.] 568, § 645; *Eisenlord* v. *Clum*, 126 N. Y. 566; *Wallace* v. *S. R. T. Co.*, 42 App. Div. 536; *People* v. *Miller*, 30 Misc. Rep. 355; *Fowler* v. *B. S. Bank*, 113 N. Y. 453; *People ex rel.* v. *Barker*, 154 N. Y. 131; 3 Am. & Eng. Ency. of Law [2d ed.], 826; *Robertson* v. *McCarty*, 54 App. Div. 104; *Mabie* v. *Bailey*, 95 N. Y. 206; *Anderson* v. *Thomson*, 38 Hun, 394; *Haux* v. *D. D. S. Inst.*, 2 App. Div. 165; 154 N. Y. 736.) Margaret Hunter's declarations that she never had children were not admissible, as they were not made *ante litem motam*, and as it was not shown that she had no interest not to misrepresent the facts in that respect. (*Young* v. *Shulenberg*, 165 N. Y. 388; *People* v. *F. F. Ins. Co.*, 25 Wend. 205; 1 Greenl. on Ev. [16th ed.] § 114e; Chase's Steph. Dig. Ev. [2d ed.] 106; Whart. on Ev. [3d ed.] § 201; Chamberlayne's Best on Ev. [Inter. ed.] 453.) Evidence of the declarations of Margaret Hunter that she never had any children was hearsay and incompetent as these

declarations did not relate to a question of pedigree. (*Young* v. *Shulenberg*, 165 N. Y. 388; *Flora* v. *Anderson*, 75 Fed. Rep. 233; *Eisenlord* v. *Clum*, 126 N. Y. 563; *Jackson* v. *Cooley*, 8 Johns. 128; Chase's Steph. Dig. Ev. [2d ed.] 103; *Clark* v. *Owens*, 18 N. Y. 442; Chamberlayne's Best on Ev. [Inter. ed.] 453; Wills on Ev. 158; Greenl. on Ev. [14th ed.] §§ 103, 104; 1 Taylor on Ev. [8th Eng. ed.] 565, § 642; Whart. on Ev. [3d ed.] § 201; *Atty.-Gen.* v. *Kohler*, 9 H. L. Cas. 669; *People* v. *Koerner*, 154 N. Y. 370; *Comm.* v. *Felch*, 132 Mass. 22.)

*Louis Marshall* for respondent. The respondent's allegations that Thomas and John Hunter were mere myths having been sustained by the unanimous affirmance of the judgment entered on the verdict of the jury, there can be no question but that the deposit held by the appellant is recoverable in this action by the personal representative of Margaret Hunter. (*Cunningham* v. *Davenport*, 147 N. Y. 43; *Haux* v. *D. D. S. Inst.*, 2 App. Div. 165; *Matter of Mueller*, 15 App. Div. 67; *Mabie* v. *Bailey*, 95 N. Y. 210; *Beaver* v. *Beaver*, 117 N. Y. 430.) The evidence which was admitted clearly warranted the submission to the jury of the question as to whether or not Margaret Hunter ever had any sons named Thomas or John. (*Haynes* v. *Haynes*, 35 L. J. Ch. 303; *Forty* v. *Hay*, 1 Dart's V. & P. [5th ed.] 320; *Millner's Est.*, L. R. [14 Eq.] 245; *Matter of Groves*, 12 Wkly. Rep. 45.) The declarations of Margaret Hunter to the effect that she never had any children were competent as pedigree evidence. (*Eisenlord* v. *Clum*, 126 N. Y. 552; *Young* v. *Shulenberg*, 165 N. Y. 385; 1 Rice on Ev. 445; *People* v. *F. F. Ins. Co.*, 25 Wend. 208; *Russell* v. *Schuyler*, 22 Wend. 279.)

O'Brien, J. The legal question involved in this appeal is whether an old and established rule of evidence is applicable to a state of facts somewhat novel and peculiar. In the month of February, 1895, one Margaret Hunter, an old lady

between 75 and 80 years of age, was found dead in the house where she had lived for 27 or 28 years in the city of Newark, N. J. It appears that she had lived alone in the house for several years prior to her death. During the latter years of her life she was in feeble health and apparently in very poor circumstances, if not in actual want. The plaintiff, who was the county physician and the proper person under the laws of that state to take charge of the remains, was notified of the death and arranged for the funeral and at the same time took possession of all of her effects. He found upon her person a pocket, evidently taken from an old dress, which contained seventeen savings bank books, representing deposits in various banks, one in Newark and the rest in the city of New York. He also found a number of papers, including three separate lists of the names of the various savings banks in which the deposits were made. These lists gave the numbers of the books and the dates of the deposits. After the plaintiff obtained possession of the lists and of the seventeen books he discovered from the lists that there were additional amounts besides those for which there were bank books, and on investigation found the missing bank books at the various banks mentioned in the lists. The bank books represented accounts kept in a variety of forms between the deceased and the several banks, and disclosed the fact that at the time of her death she had on deposit in those several banks a sum of money which, in the aggregate, amounted to over $30,000. It seems that her maiden name was Margaret Brown, and it is assumed that at some time she had married a man by the name of Hunter, but if that was the fact he had disappeared, and during the 27 or 28 years that she had lived in the house mentioned, he had never been seen by any of the neighbors in the vicinity who had long known the deceased and had frequently been at her house.

After the funeral letters of administration upon the estate of the deceased were issued to the plaintiff by the proper Probate Court in New Jersey, and subsequently by a decree of the surrogate of the county of New York ancillary letters were issued

to him under the laws of this state.   This action concerns only
the deposits made by the deceased with the defendant, a sav-
ings bank of this state.   The complaint contains three distinct
causes of action.   The first is upon an account which the
deceased opened with the defendant upon which there was
due on the first day of January, 1899, the sum of $1,300.
It is alleged that the deceased, for reasons and purposes of her
own, caused the deposits to be made in the name of Margaret
Brown, that being an assumed and fictitious name and intended
to represent the deceased and no other person.   It appears
from the record that the defendant has paid this deposit and,
hence, it is not involved in the present judgment.   The other
two causes of action are based upon two distinct and separate
accounts opened by the deceased with the defendant, aggre-
gating on the first day of January, 1899, about $2,000.   The
first of these accounts was opened on January 3d, 1882, and
the deposit was made by the deceased " in trust for son
Thomas," the deceased stating to the bank at the time that
this son was nine years of age.   On August 22d, 1883, she
opened the other account and the deposit was made in her
own name " in trust for son John," she stating to the bank at
the time that this son was eleven years of age.   The defend-
ant delivered to the deceased pass books representing these
two accounts, which remained in her possession during her
life and were found upon her person after her death.   The
plaintiff alleges that the beneficiary in each of these trusts
was not a real person, but an assumed name or a fictitious
person, and was intended to represent the deceased and no
one else.   It is also alleged that the deceased had no son or
any child or children.

The defendant answered, alleging that it had tendered to
the plaintiff the moneys due upon the account first stated,
and as to the second and third causes of action it alleged that
the accounts were opened by the deceased and the deposits
made in trust for the benefit of her two sons named, and
denied that their names were assumed or fictitious or intended
to represent the deceased, and, further, that they were real

persons and proper and necessary parties defendant in order to authorize a complete determination of the questions involved in the action. The defendant thus tendered an issue with respect to the plaintiff's right to recover upon the two trust accounts. That issue was whether the beneficiaries named were real or fictitious persons.

The question of fact tried and determined by the jury was whether these accounts, so far as they appeared upon the books of the bank to be in trust, were fictitious and intended for 'the sole benefit of the deceased. Upon this issue the plaintiff gave some proof which was circumstantial. It appeared that several of the other pass books representing accounts in other banks stated that the accounts were in trust for various other persons, some of whom it seems to have been conceded were fictitious. Proof was given to the effect that none of the neighbors of the deceased, during the long period of 27 or 28 years, had ever seen or known Hunter, the supposed husband, or any children of the deceased. This action was commenced about five years after her death, and it appears that during the interval no husband, child or relative had appeared or made any claim to her estate. It appeared from the uncontradicted evidence that the account for the benefit of the son Thomas was opened on January 3d, 1882, and the deceased then stated that he was nine years of age, while the account for the son John was opened on August 22d, 1883, and she then stated that he was eleven years of age. It is consequently argued that Thomas, who was nine years of age about two years previous, must then have likewise been eleven years of age. Moreover, it will be seen from these dates and from the ages of the children given by the depositor at the time of the deposits and her own age at the time of her death in 1895, as established by the uncontradicted evidence, that she must have been about fifty-two years of age at the time of the birth of John and Thomas, if such an event ever occurred. These facts and circumstances, with others which appear in the case, were competent for the consideration of the jury upon the issue of fact, which was

whether the beneficiaries named were real or fictitious, and the jury could have found that the deposit was for her own benefit and that the alleged beneficiaries were fictitious. The jury in considering this issue might very well have adopted the reasoning of this court in the case of *Beaver* v. *Beaver* (117 N. Y. 430), where the court said in deciding a question of kindred character : " We cannot close our eyes to the well-known practice of persons depositing in savings banks money to the credit of real or fictitious persons with no intention of divesting themselves of ownership. It is attributable to various reasons; reasons connected with taxation; rules of the bank limiting the amount which any one individual may keep on deposit; the desire to obtain high rates of interest where there is a discrimination based on the amount of deposits, and the desire on the part of many persons to veil or conceal from others knowledge of their pecuniary condition. In most cases, where a deposit of this character is made as a gift, there are contemporaneous facts or subsequent declarations by which the intention can be established independently of the form of the deposit. We are inclined to think that to infer a gift from the form of the deposit alone would, in the great majority of cases, and especially where the deposit was of any considerable amount, impute an intention which never existed and defeat the real purpose of the depositor."

The issue of fact raised by the pleadings, with respect to the real character of the deposit, was submitted to the jury and a verdict was found in favor of the plaintiff, which has been unanimously affirmed at the Appellate Division, and so, we think, that the record presents no question of law but those raised by exceptions taken at the trial. None of these exceptions but one call for any consideration, and that, possibly, presents a question of some interest and importance.

At the trial the plaintiff called witnesses who knew the deceased in her lifetime and were her neighbors in Newark, and who had frequent conversations with her in regard to her family history. They were permitted to testify to the statements and declarations of the deceased made to them at vari-

ous times, to the effect that she was alone in the world, but had been married at one time and had separated from her husband; that she had no children and no family or any relative; that she never had any children, and these same witnesses testified that they never knew or had seen her husband. This testimony was objected to by the defendant's counsel on the ground that it was incompetent and hearsay and no part of the *res gestæ*, but occurred some three years after the last account with the defendant was opened. The court overruled the objections and the defendant's counsel excepted.

There can be no doubt with respect to the character of this testimony. It is conceded that it was what, in the law of evidence, is known as hearsay; and the general rule is that such testimony is not admissible to prove or disprove a material fact involved in the issue between the parties. But this general rule is subject to one important exception, and that is, that hearsay evidence, or such declarations and statements as to matters of pedigree are admissible. The weight or effect of such evidence is for the jury, but the question here is whether it was competent. Pedigree is the lineage, descent and succession of families. The term embraces not only descent and relationship, but also the facts of birth, marriage and death and the times when these events happened. (1 Greenl. Ev. § 104.) In an issue with respect to descent or relationship, particular facts, such as births, marriages and deaths, may be proved by hearsay evidence, consisting of declarations of persons who from their situation were likely to know, and such statements are admissible when the person making the declarations is dead. It is said, however, that this case is not within the exception just referred to, for two reasons. In the first place it is an ordinary action of debt, or to recover money upon an implied promise to pay it, and, hence, does not and cannot involve any question of pedigree. It is quite true that in a great majority of such actions such a question cannot arise, but it does not follow that it is universally true. Such a question may arise in an action to recover money or other personal property that has passed to some one

by descent or intestacy. If the property left by the deceased had been real estate instead of money in bank it is quite conceivable that such a question would arise in any controversy concerning the right of succession, or the ownership of the estate, and the mere fact that in this case the controversy does not relate to the succession to lands or specific personal property, but to money on deposit in a bank, does not necessarily take the case out of the exception to the general rule concerning hearsay evidence. The issue in this case was one concerning the right of succession to the personal property of a deceased person. It is claimed on the part of the plaintiff that the deceased never had any children, and that the names entered upon the books of the bank as beneficiaries of a trust at the time of the deposit, did not represent real but fictitious persons, and, hence, that the deposit was made for the benefit of the deceased herself and that she was the absolute owner of the money at the time of her death. The defendant tendered an issue upon these allegations of the complaint, and, hence, the disputed question of fact was one of title, depending upon the true nature and character of the deposits, or whether they were for the benefit of real or fictitious beneficiaries. If the deceased never in fact had any children, the money deposited was her own and subject to her order, or that of her personal representative after her death intestate. In this respect the case is not materially different, in principle, from the ordinary action of ejectment, where the plaintiff's right to recover depends upon proof that a person in the direct line of descent died without issue. In such a case proof of pedigree is admitted to establish title to land, and here, where the subject-matter of the action is money left by the deceased, there is no good reason for excluding the same class of proof in a controversy to determine the real owner. (*Clark* v. *Owens*, 18 N. Y. 434.)

It is quite true, as suggested by the learned counsel for the defendant, that hearsay evidence as to pedigree is generally admitted to establish the descent or relationship of a real living person with some deceased ancestor. In this case it was

admitted for the purpose of establishing the fact that the names placed upon the books of the bank as beneficiaries were not real but fictitious, and that in truth the deceased had no children and, therefore, that the money deposited passed to the personal representatives upon her death. It was admitted to prove the non-existence of any children, heirs or next of kin of the deceased. The declarations of the deceased which were admitted related to her family history. They were, in substance, that she had no children or relatives, and if such declarations related to pedigree they were just as admissible to prove a negative as an affirmative. The declarations in such cases are not strictly confined to births, marriages and deaths, but extend to any inquiry necessarily involving these events, or which tend to show that either, some or all of them took place or did not. (*Russell* v. *Schuyler*, 22 Wend. 279 ; *People* v. *Fulton Fire Ins. Co.*, 25 Wend. 208.)

We think that the evidence was admissible, and this view is sustained by the discussions to be found in the adjudged cases in which the doctrine has been asserted and applied. (*Eisenlord* v. *Clum*, 126 N. Y. 552 ; *Young* v. *Shulenberg*, 165 N. Y. 385 ; *Fulkerson* v. *Holmes*, 117 U. S. 395 ; *Haines* v. *Guthrie*, L. R. [13 Q. B. D.] 818.)

An issue of fact concerning the birth or survival of children capable of taking the estate of a deceased person, whether the estate be real or personal, is fairly within the principle that permits hearsay evidence in matters of pedigree. In this case it may be said that the issue involved the question whether, in fact, any children had ever been born to the deceased, and her own declarations on that subject were, under the circumstances, admissible. In the language of Lord ERSKINE, in *Vowles* v. *Young* (13 Vesey Jr. 140) : "Courts of law are obliged, in cases of this kind, to depart from the ordinary rules of evidence, as it would be impossible to establish descents according to the strict rules by which contracts are established, and subjects of property regulated ; requiring the facts from the mouth of the witness who has

the knowledge of them.    In cases of pedigree, therefore, recourse is had to a secondary sort of evidence; the best the nature of the subject will admit, establishing the descent from the only sources that can be had."

It follows that the ruling of the trial judge admitting the declarations and statements of the deceased, in regard to her family history, was not erroneous, and the judgment must, therefore, be affirmed, with costs.

PARKER, Ch. J., MARTIN, VANN, CULLEN, WERNER, JJ. (and GRAY, J., in result), concur.

Judgment affirmed.