HARKRADER v. REED.

(First Division.  Juneau.  June 1, 1917.)

No. 1506–A.

1. BASTARDS ☞3—EVIDENCE—PRESUMPTION OF LEGITIMACY.

When a marriage is once proven or admitted, there is a presumption of law well-nigh conclusive that any child born during that marriage is legitimate. So strong is this presumption that it cannot be overcome, except by clear and convincing proof that the husband has had no access to the wife at the period of time at which by the laws of nature the child must have been begotten.

2. MARRIAGE ☞51—EVIDENCE—JURY.

Where the evidence was offered by two Indian women, relatives of the alleged wife, who was an Indian woman also, that a

---

☞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

white man took the alleged wife to his home and agreed to live with her as his wife, and by whom he had a child during such period, *held*, the question whether the facts amounted to a common-law marriage is for the jury.

3. MARRIAGE ☜47—EVIDENCE—BASTARDS.

If marriage be proved or admitted, declarations of the parents will not be admitted to defeat the consequences of marriage, as that the children are bastards; but, where the question is marriage vel non, the declarations of the parties themselves, if deceased, that they were or were not married, provided that they were made ante litem motam, are admissible evidence of the fact declared.

4. NEW TRIAL ☜35—EVIDENCE—EXCLUSION.

On the question of the legitimacy of one who claimed as the legitimate daughter of a deceased father, evidence offered by witnesses of the declarations of the mother and the putative father was rejected. On motion for a new trial, *held*, the court should have allowed the testimony of the witnesses as to the declarations of the putative father and the mother to go to the jury under proper instructions. New trial granted.

Cheney & Ziegler and A. E. Maltby, all of Juneau, for plaintiff.

H. H. Folsom and John R. Winn, both of Juneau, for defendant.

JENNINGS, District Judge. The motion for a new trial in this cause sets forth several grounds, but it will be unnecessary to notice any of the grounds assigned, except that which contends that the court erred in rejecting testimony as to the reputation of Lillie Clark and testimony as to the declarations of George Harkrader and Lillie Clark.

Complaint is made of the ruling of the court at the hearing of the testimony of Antone Marks, Peter Schramen, Gudman Jensen, J. T. Martin, and Cyrus Sheldon.

As to the testimony of Antone Marks, the objection in dispute arose in the following way: Judge Folsom said to the witness:

"Q. The reputation would be what people generally say about any particular thing. Now, do you know what the reputation in this neighborhood or vicinity was as to whether George Harkrader and Lillie Harkrader were married? A. He lived down here, and I just come down to see him every time I come over.

"Mr. Cheney: I object to that, unless he answers, that he knows.

---

☜See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"The Court: Just answer the question 'yes' or 'no.' (Question read.) A. He told me, he says, it was no marriage contract—

"Mr. Cheney: I move that that be stricken.

"The Court: That may be stricken. Do you know what the people said about it generally? A. The people said he was not married."

It will be seen from the above that the answer, "He told me, he says, it was no marriage contract," was not responsive to the question, and should have been stricken; and, being unresponsive and so stricken, no objection was made, and the witness then proceeded to answer responsively to the question propounded by the court, "Do you know what the people said about it generally?" I can perceive no error in the examination of this witness.

As to the question asked Capt. Martin concerning the reputation of Lillie Clark for chastity in the community in which she lived, I can perceive no error, for the reason that the earliest time which is being inquired of was the year 1890. At that time Lillie Clark, if married at all to George Harkrader, had been married for three years; if she was married in 1887, then her reputation in 1890 would not be admissible. Her reputation in 1890 could not throw any light on the question as to whether or not she was married in 1887.

This leaves, undisposed of, the offered testimony of Peter Schramen as to what George Harkrader told him concerning the parentage of the plaintiff; also that of Capt. Martin and Gudman Jensen on the same point; and also the offered testimony of Sheldon as to what Lillie Harkrader herself said about it.

It will be seen, from an examination of the record in this case, that the court on numerous occasions permitted the declarations of George Harkrader as to the parentage of the plaintiff, and his conduct towards the plaintiff, to go before the jury as tending to establish the fact that plaintiff was the daughter of said Harkrader; while, on the other hand, it would admit no evidence of any declarations of George Harkrader in substantiation of the reverse of that assertion, and not only so, but the court also refused to allow the witness Sheldon to testify as to what the mother of the plaintiff said as to plaintiff's parentage.

In so holding the court had in mind the well-known rule that, when a marriage is once proven or admitted, there is a presumption of law well-nigh conclusive that any child born

during that marriage is legitimate. So strong is this presumption (and the court so instructed the jury) that it cannot be overcome, except by clear and convincing proof that the husband had had no access to the wife at the period of time at which by the laws of nature the child must have been begotten. With that rule of law in mind the court rejected evidence of declarations by either parent tending to bastardize the issue of such marriage.

It will be seen, however, that this rule of law is based upon the major premise that "the marriage has been admitted or proven."

Now, how far does the evidence in this case substantiate that major premise? Answering that question, we see that there is not in the pleadings any admissions of a marriage between George Harkrader and Lillie Clark, and that the only proof of such marriage is the testimony of Emma Phillips and Ada Wilson as to the alleged verbal arrangement or contract between Harkrader and Lillie Clark, entered into in the house of Lillie Clark's parents, and their testimony and that of some others as to the manner in which George Harkrader treated Lillie Clark after the alleged marriage contract—that is, the removal of Lillie Clark to the habitation of Harkrader, their living together under the same roof, their holding of each other out as husband and wife respectively, his having a child or children by her, she and said child or children taking his name, and in general the existence of those facts which ordinarily go to make up a common-law marriage. If this evidence is to be held to be conclusive, if it was undenied and unshaken in any way whatsoever, if the jury were bound to believe it, it could be truly said that it has been proven that Harkrader and Lillie Clark were married; but were the jury bound to believe it?

It is true that the testimony of Emma Phillips and Ada Wilson as to the marriage contract is undenied in words by any other witness, and it is also true that ordinarily, when a witness is shown to have no interest whatsoever in the case, and appears to be fair and candid, and tells a reasonable and probable story as to the things he says he saw or heard, and the things he swears to have seen or heard are not inherently unreasonable or improbable, and he is uncontradicted by any other witness, or by facts and circumstances, and is not shaken by

cross-examination, his testimony should be held to establish the happening of the occurrence to which he testified.

But while this is true as a proposition of law, yet nevertheless to assert that the evidence in this case comes under that rule of law would be to make a very violent statement, for the credibility of these women and the truth of their testimony is peculiarly a matter for the jury.

Emma Phillips and Ada Wilson are two Indian women of ordinary intelligence, and they are testifying as to the terms of an alleged oral agreement made 30 years ago. At that time Ada Wilson was only 12 years old. Emma Phillips was the mother of Lillie Clark, and is the grandmother of the plaintiff. Ada Wilson is the niece of Emma Phillips, was the first cousin of Lillie Clark, the mother of plaintiff, and is a second cousin of the plaintiff, and lived with Lillie Clark in the family of Emma Phillips. Being of the same race to which the plaintiff's mother belonged, and so related to the plaintiff, and so living with plaintiff's mother, they cannot be said to be disinterested witnesses. On the contrary, both are naturally highly interested in the success of the plaintiff in this cause. Both were subjected to a grueling cross-examination, which did or did not shake their testimony on the direct according as the jury might find. It cannot be said that their evidence is of such a nature that the court should say as a matter of law that the colloquy between George Harkrader and the parents of Lillie Clark and Lillie Clark ever occurred. The court expresses no opinion on that question, for it is a question for the jury entirely; and likewise as to the testimony of other witnesses as to the manner in which George Harkrader treated Lillie Clark as going to establish a common-law marriage. The testimony on the subject of marriage is not so harmonious that the court can say as a matter of law that a common-law marriage has been proven.

The case at bar turns upon the question whether or not the plaintiff is the legitimate daughter of George Harkrader—i. e., upon the pedigree of plaintiff—and that turns upon the question of marriage vel non.

If there was no marriage between George Harkrader and Lillie Clark, plaintiff cannot prevail, and as the marriage was neither admitted, nor can be said as a matter of law to have been proven (but as its existence or nonexistence was altogether a matter for the jury), the question of marriage vel non is

one of the crucial questions of the case; and, being so, it seems to the court that the language in Craufurd v. Blackburn is very apposite, to wit:

"If marriage be proved or admitted, declarations of the parents will not be admitted to defeat the consequences of marriage, as that the children are bastards; but, where the question is marriage vel non, the declarations of the parties themselves, if deceased, that they were or were not married, provided that they were made ante litem motam, are admissible evidence of the fact declared." Craufurd v. Blackburn, 17 Md. 49, 77 Am. Dec. 327.

The general rule is that in matters of pedigree the declarations of deceased ancestors as to paternity are admissible.

"Pedigree concerns primarily the order of descent in families, including births, marriages, and deaths; legitimacy, the status of the child as derived from the matrimonial status of the parents." 1 Bishop, p. 501.

"Pedigree is the lineage, descent, and succession of families. The term embraces, not only descent and relationship, but also the facts of birth, marriage, and death, and the times when these events happened, * * * and * * * may be proved by hearsay evidence, consisting of declarations of persons who from their situation were likely to know, and such statements are admissible when the person making the declaration is dead." Washington v. Bank for Savings, 171 N. Y. 173, 63 N. E. 833, 89 Am. St. Rep. 804.

"In this case * * * it [declarations] was admitted to prove the nonexistence of any children, heirs, or next of kin of the deceased. The declarations of the deceased which were admitted related to her family history. They were, in substance, that she had no children, * * * and if such declarations related to pedigree they were just as admissible to prove a negative as an affirmative. The declarations in such cases are not strictly confined to births, marriages, and deaths, but extend to any inquiry necessarily involving these events, or which tend to show that either, some, or all of them took place or did not take place." 171 N. Y. 174, 63 N. E. 834, 89 Am. St. Rep. 806.

"An issue of fact concerning the birth or survival of children capable of taking the estate of a deceased person, whether the estate be real or personal, is fairly within the principle that permits hearsay evidence in matters of pedigree. In this case it may be said that the issue involved the question whether, in fact, any children had ever been born to the deceased, and her own declarations on that subject were, under the circumstances, admissible. In the language of Lord Erskine, in Vowles v. Young, 13 Ves. Jr. 140: 'Courts of law are obliged, in cases of this kind, to depart from the ordinary rules of evidence, as it would be impossible to establish descents according to the strict rules by which contracts are established, and subjects of property regulated, requiring the facts from the mouth

of the witness who has the knowledge of them. In cases of pedigree, therefore, recourse is had to a secondary sort of evidence, the best the nature of the subject will admit, establishing the descent from the only sources that can be had." 171 N. Y. 175, 63 N. E. 834, 89 Am. St. Rep. 806.

"In this case, in order to establish the marriage, evidence was offered of declarations by the deceased, Ambrose G. Topper, to the effect that he was married to the plaintiff Anna, and the defendants on their part also offered evidence that Topper in his lifetime on various occasions stated that he was not married to the plaintiff Anna; and these statements of the deceased were admitted by the circuit court over the objections and exceptions of the plaintiff, and it is this ruling of the court which forms the basis of the first assignment of error." Topper v. Perry, 197 Mo. 531, 95 S. W. 203, 114 Am. St. Rep. 777.

"The declarations of Imboden, both written and oral, made after the alleged marriage, that he was single and unmarried, were admissible to rebut the testimony offered by appellant to prove the marriage." Imboden v. St. Louis Trust Co., 111 Mo. App. 220, 86 S. W. 263.

"The declarations of the deceased parents as to the legitimacy or illegitimacy of their own children are admissible." 2 Jones on Evidence, 709, note 81.

"The declarations of a deceased person as to his own marriage." See 2 Jones, page 710, note 84.

I think the court should have allowed the testimony of Schramen, Martin, Jensen, and Sheldon as to the declarations of George Harkrader and Lillie Clark to go to the jury under proper instructions. Such instructions would be substantially to this effect:

"The declarations of Harkrader or Lillie Clark, if any such were made, to the effect that plaintiff was not the daughter of Harkrader, were admitted for the sole and only purpose of the bearing which they might have on the question as to whether Harkrader and Lillie Clark were married; and you are to consider such evidence, if any such there is and is believed by you, as bearing on that point alone. In other words, first determine whether they were married, as I have heretofore instructed you what it takes to constitute marriage.

"If on all the evidence you find that George Harkrader and Lillie Clark were not married, you need go no further, but must return a verdict for defendant; but if on all the evidence you believe that a common-law marriage did exist between Harkrader and Lillie Clark, and that while it existed plaintiff was born of Lillie Clark, then nothing which either Harkrader or Lillie Clark might have said (if you find from the evidence that they did say anything) concerning the legitimacy of plaintiff can be considered by you. If there was a marriage, and the plaintiff was born during its continuance, nothing can prove that she is illegitimate, except clear and convinc-

ing evidence that the husband did not have access to the mother at the period of time when the plaintiff must have been begotten."

The error committed in rejecting said testimony was a substantial error, going to the very roots of the matter in controversy.

On account of said error a new trial must be granted; and it is so ordered.