In the Matter of the Estate of IDA E. WOOD, Deceased.

Surrogate's Court. New York County, September 15, 1937.

*Joseph A. Cox,* for James F. Egan, public administrator of the county of New York.

Numerous other attorneys for various claimants.

FOLEY, S. In this accounting proceeding, with the objective of ultimate determination of the persons legally entitled to share in the estate of Ida E. Wood, the surrogate in his prior decision laid out the course of procedure for the orderly trial of the issues. The large number of persons claiming to be distributees of the decedent made necessary the formulation of a plan for the elimination of those not entitled to participate in the distribution of the estate. Since the decedent died intestate, the determination of the next of kin is required to be tested by the provisions of our Statute of Distribution (Dec. Est. Law, § 83). Citation originally issued to eleven hundred and three claimants. Of these five hundred and thirty-seven persons have filed objections to the account asserting varying degrees of kinship to the decedent and seventy-nine claimed a right of participation as next of kin of her deceased husband, Benjamin Wood.

In my prior decision I outlined three issues for determination (162 Misc. 497): *First,* the status of the persons claiming to be the next of kin of Benjamin Wood, the husband; *second,* the trial and determination of the identity of this decedent, the establishment of her maiden name and the names and identification of her parents; *third,* the ascertainment of the persons, if any, establishing their relationship by blood to the decedent and their identification within the legal class of her next of kin.

The first issue was tried and determined and five persons were proven to be the next of kin of the predeceased husband as his direct descendants. By my decision on that phase of the proceeding seventy-four claimants of more distant relationship were eliminated. (N. Y. L. J. Aug. 25, 1937.) These proven next of kin of the husband thus become potential distributees in the event that it be finally determined that Ida E. Wood left no relation of her blood. (Dec. Est. Law, § 83, subd. 15.)

The second issue was then taken up for trial. Extensive evidence, both oral and documentary, has been submitted to the court upon this issue. At the close of the trial the surrogate in his oral decision struck out the appearances and objections of many of the claimants because of the absence of any legal status. It would appear that the importance of the issue and the large number of persons whose rights are affected require that the reasons for the determination should be set forth in a formal decision.

Upon this issue, the contentions of the various claimants may be divided into two general questions: (1) Was Ida E. Wood born in England as Ellen Walsh, the daughter of Thomas Walsh and Ann Crawford Walsh who were natives of Ireland? or (2) Was she born in the State of Louisiana or of Mississippi as Ida Mayfield, the daughter of Thomas H. Mayfield and Mary Ann Crawford Mayfield? The trial has presented numerous and interesting elements of pedigree proof. The contentions of the claimants on opposite sides of the case present an absolute and irreconcilable conflict as to the identity and parentage of the decedent.

Ida E. Wood died in the Herald Square Hotel in 1932. She had been a recluse for the last thirty years of her life. She left an estate of approximately nine hundred thousand dollars. Most of it was in cash. Two alleged wills of hers were presented for probate. One was refused admission because of the forgery of her signature to it. The other failed because of inability to prove execution although the body of the will was clearly in her own handwriting and the signature authentic. She, therefore, died intestate. She had lived with her sister, who was known as Mary E. Mayfield. The latter died in 1931. With them also resided a woman known as Emma Wood over whose identity doubt has arisen as to whether she was the daughter or the sister of the decedent. That question is academic since she predeceased the decedent leaving no descendants.

Ida E. Wood, at the time of her death, was ninety-three years of age. She was the widow of Benjamin Wood who had attained distinction in New York city as a successful stockbroker and as publisher of the former newspaper known as the *New York Daily News*. Ida E. Wood appears to have been associated actively with him for many years in its management and ownership. Benjamin Wood died in 1900. Fernando Wood, his brother, was mayor of the city of New York during the years 1855 to 1858. He served later in that office in the years 1860 to 1862. With this background of the history of her husband and of his family, Ida E. Wood appears from the evidence to have taken part in her earlier and middle life in public and social activities of this city. She possessed or acquired a high degree of culture. Her letters indicate refinement. She and her husband traveled extensively both in this country and abroad. She was shrewd in her business operations and prudent in the management of her large fortune. Much of the financial success of her husband was apparently due to her qualities of thrift and frugality.

There are other elements of her character which are revealed by the evidence. She was secretive of her personal affairs which

was demonstrated by her living as a recluse for the last thirty years of her life. During most of that period she kept secret her whereabouts from her stepchildren and step-grandchildren. A few years before her death she was adjudicated an incompetent. After her demise, in due course the public administrator of New York county took over her estate and he is the accounting party here. She appears to have kept her letters, checks and bills with meticulous care. She made and retained copies of letters sent by her. Most important in the determination of this case, she kept in her own handwriting within the group of her personal papers, records of her family history and the dates and places of the births and deaths and the places of burial of her parents, her brothers and sisters.

The only doubt created as to her identity which has afforded a basis for the assertion of a claim by certain parties to this proceeding, is the fact that in her early years she was known as Ida E. Mayfield. Her mother, her brother and her sister also adopted Mayfield as the family name. The evidence, however, and particularly the documentary evidence, indubitably leads to the conclusion that Ida E. Wood was born Ellen Walsh, the daughter of Thomas Walsh and Ann Crawford Walsh and that the change of name from Walsh to Mayfield was made by herself and her family undoubtedly influenced by her pretenses to a social standing in this community. The first indication that Mrs. Wood had changed her name from Walsh to Mayfield is shown to have occurred about the year 1857. At that time she was nineteen years of age. An old-fashioned valentine addressed to her as Ida Mayfield bears that date. Her disposition to adopt a name different from her born surname is also supported by the documentary proof which clearly and definitely shows that she was known in the years 1864 to 1867 as Ida E. Harvey. Recorded deeds and mortgages were received in evidence which established her acquisition of real property in the city of New York under that name. It has also been shown that subsequently she conveyed this property as "Ida Wood (formerly Ida Harvey) wife of Benjamin Wood." The latter deed was made a few days after her formal marriage to Benjamin Wood in 1867. It is also interesting to note in this connection that the witness to this deed was her sister, who signed her name as Mary E. Walsh. She was later known as Mary E. Mayfield.

Significant also are two deeds of property in Brooklyn. In one the conveyance was to Mary E. Walsh, identified by other records as Mrs. Wood's sister. In the other deed Mary E. Walsh in 1877 conveyed the same property to herself as Mary E. Mayfield. To summarize these alterations of names as developed by the evidence, Ellen Walsh, the decedent, becomes Ida E. Walsh. Ida

E. Walsh becomes Ida E. Mayfield. She shows diversification by describing herself in the same period as Ida E. Harvey. She marries and becomes Ida E. Wood. Thereafter, her mother, Ann Walsh, who comes to reside with her, changes her name to Ann Crawford Mayfield. Mrs. Wood's sister changes her baptismal name of Mary Ann Walsh to Mary E. Walsh and then to Mary E. Mayfield. Mrs. Wood's brother, Michael Walsh, becomes Henry Benjamin Mayfield. Finally she changes the name of her own father after his death from Thomas Walsh to Thomas H. Mayfield. The motives of the decedent in her own actions and in her influence upon the members of her family are palpable. She was plainly actuated by her desire to suppress her humble origin and to assume an alleged social standing in the period before and after her marriage to Benjamin Wood. She spoke with pride of having danced with the Prince of Wales (later King Edward VII) during his visit to New York and of having entertained President Lincoln in her home.

It is the jest of fortune that having attained wealth and prominence, she abandoned her pretenses at the age of sixty and retired to strict seclusion. By way of direct contrast, during her last years in her talks and writings she cherishes only the memory of her real parents and her Walsh and Crawford lineage.

The line of evidence presented by the Walsh claimants tending to prove that Mrs. Wood was born as Ellen Walsh consists almost exclusively of documentary evidence. Of impressive importance are the written declarations of the decedent herself. (*Washington* v. *Bank for Savings*, 171 N. Y. 166; *Farmers' Loan & Trust Co.* v. *Wagstaff*, 194 App. Div. 757.) Corroborative of her own statements and entirely independent thereof there has been submitted to the Surrogate a remarkable series of records of vital statistics — marriages, births and deaths — and cemetery records, recorded instruments and census records which cover the history of the Walsh family and of the decedent as a member of it for a period of almost one hundred years from the year 1836 to the year 1932. All of these important elements of proof verify and confirm the decedent's own written notations as to the distinctive events in the lives of her parents and her brothers and sisters. There were found in her personal effects certain statements in her own handwriting giving the date of her birth as January 14, 1838, and the place Oldham, Lancaster, England. The independent documentary evidence shows that she was baptized in St. Mary's Roman Catholic Church, Shaw street, Oldham, Lancaster, England, on April 1, 1838, as Ellen Walsh, the daughter of Thomas Walsh and Ann Crawford Walsh. The date of her birth appearing on this certificate of baptism does not exactly accord with the date in her own hand-

writing, but the discrepancy is inconsequential. The official English records show that her parents were married in the Collegiate and Parish Church in the county of Lancaster, England, on February 13, 1836. A photographic copy of the original marriage record with the signatures of the parents, Thomas Walsh and Ann Crawford Walsh, has been produced in evidence, In later years the parents lived in Malden, Mass., as established by the official census records of that State of 1855 and 1865 and by other documentary evidence. In the year 1859 Margaret Walsh, the mother of Thomas Walsh (the father of the decedent), died in Malden, Mass., and he applied for letters of administration upon her estate in the local Probate Court. A photostatic copy of his petition convincingly proves that the signature upon that document is identical with his signature upon the official record of his marriage in England in 1836. It is unnecessary to recite all of the documents which so clearly trace the whereabouts of the Walsh family and its members throughout the years. The more important elements include the census record of England in 1841 and the census records of the State of Massachusetts — which show the members of the family, their ages and residences at the time of enumeration. Deeds of real property taken in the names of various members of the family and recorded in public offices in Massachusetts have been submitted. There was found in the effects of the decedent a receipt for the purchase of a grave in a cemetery in Cambridge, Mass. Corroborative of this receipt and identifying the location of the family plot of the Walsh family are the independent records of the Cambridge Catholic Cemetery. The inscription upon the tombstone over the grave recites the burial of Thomas Walsh and the date of his death, which accords with Mrs. Wood's own entry of her father's death. The inscription on the tombstone likewise recites with accuracy the names and dates of death of her two brothers, which again conform to her memoranda.

The mother of the decedent, Ann Crawford Walsh, appears from the Federal census records to have resided with her daughter, Ida E. Wood, in New York city in 1880. In this period she had assumed the name of Mayfield. She died in Glasgow, Scotland, in the year 1883. Her body was brought to this country and reinterred in Calvary Cemetery in New York city in a plot purchased and owned by Ida E. Wood. Mrs. Wood erected a tombstone upon this plot which is inscribed " Sacred to the Memory of our Beloved Mother Ann Mary Crawford Mayfield born November 17, 1814 departed this life July 6, 1883." The context of the original draft of the inscription upon this stone in Mrs. Wood's handwriting and produced from her records referred to the prior deaths of seven children,

the brothers and sisters of Ida E. Wood. The official records of England and Massachusetts verify the births and deaths (prior to their mother) of these seven persons. Subsequently the carving on the stone was changed by the direction of the decedent. The reference to the name of the mother as Ann Mary Crawford Mayfield was altered by the addition of the words " Widow of Thomas Henry Mayfield." This description of the husband was plainly made by Mrs. Wood to avoid any appearance of discrepancy or the necessity for explanation of the use of the name which the family had adopted in previous years. At most, it constituted a posthumous change by her of the name of her father from Thomas Walsh to Thomas Henry Mayfield.

The documentary evidence clearly proves that the mother and the father of Ida E. Wood were born in Ireland. There were produced from her personal effects notations in her handwriting giving the names and addresses of certain persons in Ireland. The existence of these persons and the general accuracy of the addresses and their relationship to her mother are substantiated by the official records of vital statistics obtained from the appropriate offices in Ireland.

The record of the decedent's marriage to Benjamin Wood in 1867 is in evidence. She was married in the Church of St. Paul the Apostle in New York city. The name of the bride is entered in its records as Ida Ellen Walsh Mayfield. Under the rules of her church it was necessary for her to obtain a dispensation for the marriage because of the difference in religion of the couple. It is extremely convincing that in the record of the Chancery Office of the Roman Catholic Archdiocese of New York, which evidences the granting of the dispensation and the performance of the marriage ceremony, she is described as Ida Ellen Walsh, her real name.

In certain of the documents it appears that the Walsh family was also known as Welsh or Welch. There is no significance in these slight variations and such names have been used interchangeably by other persons. Evidence of the use of these varying names is found in one of the deeds of the Massachusetts property where the father of Ida E. Wood described himself as Thomas Walsh sometimes known as Thomas Welsh.

When the evidence submitted in behalf of the Walsh claimants is considered as a whole, the conclusion is inescapable that the decedent was Ellen Walsh and later Ida Ellen Walsh and that she was born of the parents whom she so accurately described.

The principles applicable to pedigree cases involving proof of identity of a person have been frequently stated. Their object is to lead the trier of the facts to a reasonable conclusion. Pedigree is

the lineage, descent and succession of families. (*Washington* v. *Bank for Savings*, 171 N. Y. 166.) The primary rule stresses the progressive value of proven coincidences and circumstances based upon undisputed facts, all pointing to only one conclusion. A single and detached undisputed fact or coincidence is seldom of value. Thus, the mere capricious use of the name Mayfield by the decedent has led to the assertion of claims of kinship by a large group of persons in the pending proceeding whose only basis of relationship is such similarity of name of themselves or their ancestors. As the trial of a pedigree or identity case proceeds, the accumulation of coincidences and undisputed facts and records when bound together multiplies the convincing quality of the entire case. In this connection there is a pertinent discussion of the consideration of proven circumstances and coincidences in the learned work of Professor Wigmore entitled " Principles of Judicial Proof " (at p. 64) which in great part was adopted from his Treatise on Evidence. He writes of the probative value of a single circumstance and the increasing weight of a group of cumulative circumstances. " The evidencing feature is usually a group of circumstances, which as a whole constitute a feature capable of being associated with a single object. Rarely can one circumstance alone be so inherently peculiar to a single object. It is by adding circumstance to circumstance that we obtain a composite feature or mark which as a whole cannot be supposed to be associated with more than a single object. The process of constructing an inference of identification thus consists usually in adding together a number of circumstances, each of which by itself might be a feature of many objects, but all of which together can conceivably coexist in a single object only. Each additional circumstance reduces the chances of there being more than one object so associated. * * * It may be illustrated by the ordinary case of identification by name. Suppose there existed a parent named John Smith, whose heirs are sought; and there is also a claimant whose parent's name was John Smith. The name John Smith is associated with so many persons that the chances of two supposed persons of that name being different are too numerous to allow us to consider the common mark as having appreciable probative value. But these chances may be diminished by adding other common circumstances going to form the common mark. Add, for instance, another name circumstance,— as that the name of each supposed person was John Barebones Bonaparte Smith; here the chances of there being two persons of that name, in any district however large, are instantly reduced to a minimum. Or, add a circumstance of locality,— for example, that each of

the supposed persons lived in a particular village, or in a particular block of a certain street, or in a particular house; here, again, the chances are reduced in varying degrees in each instance. Or, add a circumstance of family,— for example, that each of the persons had seven sons and five daughters, or that each had a wife named Mary Elizabeth and three daughters named Flora, Delia, and Stella; here the chances are again reduced, in varying degrees, in proportion to the probable number of persons who would possess this composite mark. In every instance, the process depends upon the same principle,— the extent to which the common mark is capable of being associated, in human experience, with more than one object."

This statement applies with particular force to the present proceeding especially when the evidence of the Mayfield claimants is considered and compared with that submitted by the Walsh claimants. The Mayfield claimants contend that Ida Wood was the daughter of Thomas Henry Mayfield and Mary Ann Crawford Mayfield and that she was born in Mississippi or Louisiana. Not a scintilla of competent oral evidence or a scrap of documentary proof has been offered to show that these alleged parents ever were married or ever had a daughter known as Ida Mayfield who became Ida E. Wood. Similarity to the names of the actual parents of Mrs. Wood has been plainly fabricated by the attempted use of her real mother's name — Crawford. No record of the birth of an Ida Mayfield to the alleged parents in either of the States mentioned or in any other State or country has been produced. There may have been one or several Ida Mayfields in the vicinity of New Orleans. The name Mayfield and the name Crawford seem to have been common in that locality. The claim to relationship with the decedent by the Mayfield group is based upon mere supposition.

The surrogate, under the rules laid down by the Court of Appeals in *Aalholm* v. *People* (211 N. Y. 406), has excluded the testimony of certain of these claimants and certain witnesses produced by them as to declarations tending to show that Ida E. Wood was Ida Mayfield. Declarations made by deceased persons are received in pedigree cases. The ordinary prohibition against hearsay evidence does not operate against these declarations. As stated in the *Aalholm* case, the rule as to the admissibility of such declarations is subject to three essential conditions: (1) The declarant must be dead; (2) they must have been made *ante litem motam*, that is, at the time when the declarant had no motive to distort the truth; (3) the declarant must be related by blood or affinity to the family

concerning which he speaks. In the pending case it was attempted to be shown by certain of the witnesses that their parents or their blood relations had told them of the existence of an Ida Mayfield who it was stated afterwards became Ida E. Wood. No independent proof of any character whatsoever of the relation of those declarants to the decedent here was adduced. The rule as to the admissibility of declarations requires that the relationship of the declarant to the decedent must first be established by independent evidence before the declaration becomes competent. (*Aalholm* v. *People, supra; Matter of Wendel,* 146 Misc. 260; *Matter of Findlay,* 253 N. Y. 1; *Eisenlord* v. *Clum,* 126 id. 552; *Young* v. *Shulenberg,* 165 id. 385; *Washington* v. *Bank for Savings,* 171 id. 166; *Blackburn* v. *Crawford,* 3 Wall. 175.)

In its opinion in the *Aalholm* case the court enunciated the reasons for these rules. " The qualification is one of growing importance. Without it a person may establish his relationship to any family he chooses by simply stating that he has heard from a member of his family a recitation of the facts establishing the desired connection. In this country, filled with densely crowded cities in which large fortunes are no longer rare, it will be wiser and safer to maintain this rule, circumscribed by this qualification, than to relax it even in cases that appear to be meritorious. It may prove a hardship now and then to require even slight evidence of the relationship of a decedent to the family of which he declares before his declarations will be received, but the consequences of the contrary rule would inevitably be much more serious." The necessary link of blood relationship between our decedent and the Mayfield claimants is entirely absent in the record of the pending proceeding. A further discussion of the entire insufficiency of the evidence submitted on their behalf is unnecessary except to state that it constitutes an array of contradictory dates and happenings which are entirely inconsistent with the proven history and actual whereabouts of the real Ida E. Wood and of the members of her real family.

To summarize the entire evidence in the case it appears that three lines of proof are presented. The first is that revealed in the handwriting of Ida E. Wood with her own notations of her family history. The second line consists of the independent and uncontrovertible documentary proofs submitted by the Walsh claimants which verify, corroborate and confirm the accuracy of the memoranda made by Mrs. Wood personally. The third line of proof as presented by the Mayfield claimants in so far as it attempts to establish relationship to the decedent lacks any contact or identifica-

tion whatsoever with the blood of the decedent. No common ancestor has been shown. The first two lines of evidence coincide and the coincidence compels the conclusion found by the surrogate that Ida E. Wood was born Ellen Walsh.

The motion of the attorney for the public administrator and other counsel to strike out the notices of appearances and the objections of all the Mayfield claimants has been granted upon the merits. The surrogate specifically finds that they are not related in any manner whatsoever to the decedent here and are not persons interested in her estate. The names and numbers of such claimants may be included in the intermediate decree. Apparently they aggregate four hundred and thirty persons.

Submit such intermediate decree on notice accordingly. The date for the hearing of the third issue involving the determination of the persons within the class of Walsh and Crawford claimants who may be proven to be the lawful next of kin of the blood of the decedent will be fixed and published hereafter by the surrogate.