In the Matter of the Estate of IDA E. WOOD, Deceased.

Surrogate's Court, New York County, March 22, 1939.

*Denis B. Maduro,* for the claimant No. 81.

*Conboy, Hewitt, O'Brien & Boardman* [*Thomas J. Nevins* of counsel], for the claimants Nos. 1 to 7, inc.

*Bandler, Haas & Collins* [*John F. Collins* of counsel], for the claimants Nos. 8, 8-a and 9.

*Theodore M. Gibbons, Jr.,* for the claimants Nos. 91 to 101, inclusive.

*Joseph A. Cox,* for the public administrator.

FOLEY, S. By this decision final determination is made of those persons found to be the next of kin of the decedent, Ida E. Wood, and entitled to share in the distribution of her net estate. The surrogate finds upon the evidence that these persons are ten in number, as follows: Eugene F. O'Donnell, who survived the decedent but died since her death (claimant No. 1); Thomas Francis O'Donnell (claimant No. 2); Katherine J. Sheehan (claimant No. 3); Winifred McEneaney (claimant No. 4); Stephen L. Gallagher (claimant No. 5); Thomas F. Reynolds, who survived the decedent but died since her death (claimant No. 6); William F. Murphy (claimant No. 7); Michael Kennedy, who survived the decedent but died since her death (claimant No. 8); Hugh Kennedy, who survived the decedent but died since her death (claimant No. 8-a), and Catherine Kennedy (claimant No. 9).

The above next of kin who have died are represented by the following persons: Frank J. O'Donnell, as ancillary executor of the estate of Eugene F. O'Donnell (No. 1); Bernard B. Whelan, as ancillary executor of the estate of Thomas F. Reynolds (No. 6), and Margaret Corcoran, as ancillary executrix of the estate of Michael Kennedy (No. 8) and Hugh Kennedy (No. 8-a).

These claimants have been established as first cousins once removed and thereby within the fifth degree of kindred. They are each entitled to one-tenth of the estate.

The present determination is made in the accounting proceeding brought on by the public administrator of New York county who has administered the estate.

An alleged will of the decedent was denied probate because of the impossibility of proving valid execution. That instrument was wholly ineffective because of the deaths of the executrix and the only two legatees mentioned in it, prior to that of the decedent. (*Matter of Wood,* 153 Misc. 128.) Another alleged will of the decedent was also denied probate on the ground that the instrument was a forgery. (*Matter of Wood,* 159 Misc. 440.) The decedent, therefore, died intestate. The estate approximates $1,000,000.

At the inception of the accounting proceeding the surrogate, in order to simplify the trial of the issues, laid out the course of procedure for their separation and disposition. (*Matter of Wood*, 162 Misc. 497.) We followed the course employed by this court with salutary results in *Matter of Wendel* (143 Misc. 480). Citation originally issued in the present proceeding to 1,103 persons who claimed to be statutory distributees of the decedent. Approximately 616 persons filed objections to the account asserting a right to participate in the distribution. Of these, 79 claimed to be related to the decedent through her predeceased husband, Benjamin Wood. The remaining claimants alleged a right to distribution as blood relations of the decedent.

The issues outlined for trial and determination by the surrogate were, *first*, the status of the persons claiming to be the next of kin of the husband; *second*, the identity of the decedent, the establishment of her maiden name and the identification and names of her parents, and *third*, the question presented for determination in this decision — the ascertainment of the persons related by blood to the decedent in the nearest degree and their identification within the legal class of her next of kin.

The first issue was tried and determined and five persons were proven to be the next of kin of the predeceased husband as his lineal descendants. The claimants to a more distant relationship to him were thereby eliminated. (*Matter of Wood*, N. Y. L. J. Aug. 25, 1937, p. 486, not officially reported.) These proven next of kin of the husband thus became potential distributees under the statute in existence at the date of death of the decedent, but since repealed, in the event that Ida E. Wood left no relations of her blood. (Dec. Est. Law, § 83, subd. 15.)

The second issue was then tried and determined. (*Matter of Wood*, 164 Misc. 425.) My decision on that phase of the proceeding established that Ida E. Wood was born in England as Ellen Walsh, a daughter of Thomas Walsh and Ann Crawford Walsh. Her family was shown to have come to the United States some time prior to the year 1855 and to have resided in Massachusetts and subsequently in New York. Upon this phase of the proceeding the family history of the mother and father of the decedent, her brothers and sisters and the circumstances surrounding her own marriage and manner of life up to the time of her death was proven in great part by documentary evidence. Because of the conclusion reached by me in that decision, the objections of approximately 430 claimants were dismissed upon the ground that they were persons not related in any degree to Mrs. Wood.

In the third and final phase of the proceeding extensive evidence, both oral and documentary, has been submitted to the surrogate

in an effort on the part of counsel to establish that their clients came within the legal class of next of kin. Upon a review of the entire evidence the surrogate holds that the maternal grandfather and grandmother of the decedent were Patrick Crawford and Ann Crawford who lived in Dublin, Ireland. Their children have been shown to be Ann Crawford Walsh, who was the mother of the decedent; Eliza Crawford O'Connor, who was the grandmother of the established claimants, numbered 1 to 6, inclusive, and named above; Mary Ann Crawford Kennedy, who was the grandmother of claimants numbered 8, 8-a and 9 above named; Patrick Crawford, who was the grandfather of claimant numbered 7 above named, and Margaret Crawford Larkin, who died without issue.

The proven claimants were divided into general classes represented by two separate firms of attorneys, but the great mass of the testimony adduced by each group tended to prove kinship to the decedent not only of that particular group but also of the other group of next of kin. The documentary evidence consisted not only of official and church records in Ireland, England and the United States of births, baptisms, marriages and deaths, but notations made by the decedent in her own handwriting and found in her personal effects which identified the names and addresses of her own relations who have been shown to be similarly relations of the established next of kin. As to these notations the observation of Justice WOODWARD in *Burdick* v. *Fuller* (199 App. Div. 94, 98) is pertinent: " The Chinese have a proverb that ' the palest ink is better than the most retentive memory.' "

In my prior decision (*Matter of Wood,* 164 Misc. 425) I discussed the tests of lineage, pedigree and kinship, the legal rules applicable to the proofs and the judicial process which, upon an array of all of the evidence, leads to the establishment of the class of legal heirs of the decedent. (Wigmore, Principles of Judicial Proof, p. 64; *Aalholm* v. *People,* 211 N. Y. 406; *Matter of Wendel,* 146 Misc. 260; *Matter of Findlay,* 253 N. Y. 1; *Eisenlord* v. *Clum,* 126 id. 552; *Young* v. *Shulenberg,* 165 id. 385; *Washington* v. *Bank for Savings,* 171 id. 166; *Blackburn* v. *Crawford,* 3 Wall. 175.) The application of these criteria to the documentary and oral proofs in the pending proceeding has conclusively established the identity of the persons entitled to distribution of the estate as the next of kin of the decedent.

The proofs in respect of the contentions of the established claimants numbered 8, 8-a and 9 were particularly strong. The evidence in support of the relationship of the proven claimants numbered 1 to 7, inclusive, was equally convincing. They consisted not only of documentary evidence and written and oral declarations

of Mrs. Wood herself, but also of the testimony of the witnesses as to personal knowledge of the family relationship and the pedigree declarations made by their deceased relations as to kinship with the family of Mrs. Wood. It was contended upon the trial that these declarations could not be received or considered because of the rule in *Aalholm* v. *People* (*supra*). That authority required that the determination of kinship shall not be made upon the declarations of deceased relations by blood or marriage of the claimant unless the relationship of the declarant to the decedent be first established by independent evidence. There is indication in the opinion that slight evidence only of such relationship need be given. In the present proceeding the independent evidence of relationship was not merely slight, but was substantial and in great part documentary. It was shown that the grandmother of these claimants was one of the godparents at the baptism of the brother of Mrs. Wood on May 1, 1837, in a church in England. The same priest who baptized this child also baptized on March 27, 1837, a child of Eliza Crawford O'Connor, the sister of Mrs. Wood's mother. The British official census record of 1841 showed that the families of Eliza O'Connor and Ann Walsh, these two sisters, resided in the same house in Huddersfield, England. The names and ages of the grandfather and the grandmother of the claimants and their children and of the mother of the decedent and her children, including the decedent, accord with subsequent documentary proofs.

Another important and convincing line of evidence is found in certain photographs and pictures produced from two independent sources. There was found in the personal effects of the decedent a picture of the two sisters taken together — her mother and the grandmother of these claimants. There were other pictures among her private effects of her own mother taken alone. There were produced from the collection of the family of the claimants similar separate pictures of their grandmother and pictures of their grandaunt, who was the mother of Mrs. Wood. A comparison of these pictures from the decedent's own collection and from the family collection of the claimants leaves no doubt of the identity of the two persons as the two sisters, Ann Crawford Walsh and Eliza Crawford O'Connor.

In the process of arriving at a conclusion that these established claimants are the next of kin of Mrs. Wood, no single element of proof would have been sufficient. It is the array of evidence proceeding from different parts of the globe, covering a family history of more than one hundred years pieced together by indisputable documentary evidence of church and public records, and

the testimony of credible witnesses who were unshaken by cross-examination, and the decedent's own written declarations of her relations which make inescapable the determination of blood relationship of these persons to Mrs. Wood. All the elements of proof combine to form a composite picture with the necessary conclusion of identification and establishment of the true heirs of the decedent. (Wigmore, Principles of Judicial Proof, pp. 64, 77.)

My determination necessarily requires the striking out of the objections of the claimants numbered 91 to 101, inclusive. These persons asserted that they are the grandchildren of Samuel Crawford, an alleged brother of Ann Crawford Walsh, the mother of the decedent. The testimony in support of that claim is wholly insufficient. It consists in part of indefinite and unconvincing declarations of deceased relations which are incompetent under the rule of *Aalholm* v. *People* (*supra*), because they lack the essential proof of the relationship of the declarants to the decedent or her family. There is no documentary or oral proof in the record to establish that Ann Crawford Walsh, the mother of the decedent, ever had a brother Samuel. Reliance is placed upon the record of the marriage of Samuel Crawford and Mary McGuire in a church in Leyton, England, in 1825. The record shows that one of the witnesses to that marriage was a "Mary Ann Crawford" who is claimed to be the mother of the decedent. The documentary proofs and other established facts in the record negative the contention that the mother of the decedent was the witness to the marriage. The latter was baptized and known as Ann Crawford, not Mary Ann Crawford. It has been shown by the census records and particularly by an entry in the decedent's own handwriting that her mother was born not earlier than the year 1814. The approximate year of her birth is likewise established by the British census record of 1841, the Massachusetts census records of 1855 and 1865 and the Federal census record of New York city of 1880.

Mrs. Wood, the decedent, made a notation that her mother was born on November 17, 1814, and that date appears upon the tombstone over the mother's grave in Calvary Cemetery in New York city. I accept Mrs. Wood's notation as authentic as to the age of her mother. It is inconceivable that she would have acted as a witness at the marriage of Samuel Crawford in 1825 when she was approximately eleven years of age. Moreover, the surrogate finds as a fact that the original signature, Mary Ann Crawford, appearing upon the marriage record of Samuel Crawford is not the authentic signature of Ann Crawford Walsh, the mother of the decedent. Her genuine signature appeared upon her own marriage record made in 1836 and it is utterly unlike the disputed signature of the witness to the marriage, Mary Ann Crawford.

The surrogate accordingly held at the close of the trial that the claimants numbered 91 to 101, inclusive, were not within the class of legal next of kin of the decedent nor were they related in any degree to her.

The objections of Mark Crawford, claimant No. 81, have been dismissed by intermediate decision upon the ground that he was not related to the decedent. (*Matter of Wood*, N. Y. L. J. Mar. 16, 1939, p. 1213.) Instead of submitting an intermediate decree upon that decision, the dismissal may be included in the final decree herein.

The objections of all claimants other than the persons found to be the next of kin of the decedent are dismissed.

The surrogate finds upon the evidence that no next of kin on the paternal side of her family survived her and he further finds specifically that the father of the decedent never had a brother, that his only sister, Ann Walsh Fitzpatrick, predeceased the decedent and that all of her issue likewise predeceased the decedent.

Submit decree on notice settling the account and directing distribution in accordance with this decision.