In the Matter of the Petition of EMMA S. STARBUCK, as Executrix, etc., of CHARLES A. STARBUCK, Deceased, for the Fixation of an. Allowance to GRAEF & ARNOLD, Attorneys for the Estate, for Fees and Disbursements.

EMMA S. STARBUCK, as Executrix, etc., of CHARLES A. STARBUCK, Deceased, and Others, Appellants; BANK OF THE MANHATTAN COMPANY, Respondent.

Second Department, November 18, 1927.

**Surrogate's Court — jurisdiction — surrogate has no power of his own motion to modify decree, making allowance to attorneys, on ground of judicial error — Surrogate's Court Act, § 20, subd. 6, and § 316, applied.**

The surrogate having made a decree fixing the allowance of attorneys, upon a petition apparently made under section 231-a of the Surrogate's Court Act, has no power thereafter, of his own motion, to modify the decree and refix the allowance made in the original decree, for, under subdivision 6 of section 20 of the Surrogate's Court Act, the surrogate is not given power to review a judicial error made by himself, especially on his own motion.

Section 316 of the Surrogate's Court Act, which provides that except where a contrary "intent is expressed in, or plainly implied from the context of this act," a provision of law or of rules, applicable to practice in the Supreme Court, applies to practice in the Surrogate's Court, does not authorize a surrogate to modify his own decree because of judicial error.

APPEAL by Emma S. Starbuck and others from a decree of the Surrogate's Court of the county of Westchester, entered in the office of the clerk of said Surrogate's Court on the 17th day of May, 1927, purporting to amend a decree entered on the 8th day of April, 1927.

*Wallace T. Stock* [*Arthur W. Graef* and *Edwin L. Garvin* with him on the brief], for the appellants.

*Melber B. Chambers*, for the respondent Bank of the Manhattan Company.

CARSWELL, J. On March 17, 1927, upon a petition pursuant apparently to section 231-a of the Surrogate's Court Act (as added by Laws of 1923, chap. 526), the surrogate held a hearing to fix and determine the services of Graef & Arnold, the attorneys for the petitioner, Emma S. Starbuck, as executrix for Charles A. Starbuck, deceased. On April 5, 1927, the return day of the citation, the petitioners appeared in support thereof, as did also the Empire Trust Company and the Bank of the Manhattan Company, creditors, in opposition thereto. A complete disclosure of the entire situation was then had, and the surrogate allowed counsel fees of $35,000, for what

the petitioners claimed were unusual services as a matter of extent. The surrogate, on April 5, 1927, announced the amount of the allowance. A decree was prepared and noticed for settlement on April 8, 1927, when the same respondents appeared in opposition as had appeared at the time of the original tentative fixation of the allowance. On both these occasions it was made known to the surrogate that the gross estate was $482,000, of which $300,000 was collateral held by creditors, leaving $182,000 for distribution to general creditors. The surrogate on this occasion exacted a stipulation from the attorneys, Graef & Arnold, that the amount of their allowance was to cover their legal services up to and including the final accounting. On April 8, 1927, a decree in accordance with the foregoing was made by the surrogate, and payments thereunder made by the executrix on April 15, 1927.

On April 27, 1927, the surrogate of his own motion filed a memorandum wherein he assumed to reconsider his decree of April 8, 1927, and to reduce the allowance theretofore decreed to Graef & Arnold from $35,000 to $20,000, " for all services including final account." Thereupon the respondent Bank of the Manhattan Company noticed for settlement a proposed amended decree based on this memorandum of the surrogate, dated April 27, 1927, at which time Graef & Arnold filed an affidavit in opposition. The amended decree was signed and entered by the surrogate on May 17, 1927.

The appellants urge that the surrogate was without power to modify his decree of April 8, 1927, and reduce the allowance therein made to counsel, and that, therefore, the May 17, 1927, decree should be reversed and the April eighth decree reinstated. They urge that the Surrogate's Court Act gives no power to make the May 17, 1927, decree.

The Court of Appeals, per COLLIN, J., in *Matter of Martin* (211 N. Y. 328, 330), said: " A surrogate can exercise only such jurisdiction as has been specially conferred by statute, together with those incidental powers which may be requisite to effectually carry out the jurisdiction actually granted. (*Matter of Underhill,* 117 N. Y. 471.) Those claiming under the order or decree of the surrogate must show affirmatively his authority to make it, and the facts which give him jurisdiction."

The statute which fixes the surrogate's power in a situation of this character is section 20 of the Surrogate's Court Act, which reads:

" § 20. Incidental powers of the surrogate. A surrogate, in or out of court, as the case requires, has power: * * *

" 6. To open, vacate, modify, ·or set aside, or to enter as of a

former time, a decree or order of his court; or to grant a new trial or a new hearing for fraud, newly discovered evidence, clerical error, or other sufficient cause. The powers conferred by this subdivision must be exercised only in a like case, and in the same manner, as a court of record and of general jurisdiction exercises the same powers."

The foregoing limits the power of the surrogate to open or vacate a decree to cases where " fraud, newly discovered evidence, clerical error, or other sufficient cause " is shown. The phrase " or other sufficient cause " has been construed to mean " causes of like nature with those specifically named." (*Matter of Tilden*, 98 N. Y. 434, 442.)

There is no suggestion herein of fraud, newly-discovered evidence or clerical error. That which the surrogate has herein recognized as an error is a judicial error.

This court, per Mr. Justice WOODWARD speaking for a unanimous court, in *Matter of Peck* (131 App. Div. 81) said: " Clearly the deliberate language made use of in a judicial decree, made and entered with all the formalities of law, cannot be said to constitute a clerical error; it is, if anything, a judicial error, and the correction of judicial error is not intrusted by the statute to the surrogate, but to the appellate courts. Any party aggrieved may appeal (§ 2568) within thirty days after the service of a notice of the decree (§ 2572), and we are of the opinion that the provisions of the Code of Civil Procedure above cited, making provision for opening a decree for fraud, newly-discovered evidence, clerical error or other sufficient cause, necessarily precludes the idea that a judicial error may be corrected by a motion made before the surrogate. If it may, then a decree which, by the terms of section 2742 of the Code of Civil Procedure, becomes conclusive evidence against all the parties upon certain facts may, at any time after the time for appeal has expired, be subject to be opened or set aside, for it was held in *Matter of Henderson* [157 N. Y. 423] that there was no limit of time imposed upon the exercise of the powers granted under the provisions of section 2481 of the Code of Civil Procedure. No such intention may be imputed to the Legislature, and the dignified and orderly administration of justice requires that judicial errors shall be corrected, not at the caprice or whim of the court of original jurisdiction, but in the method clearly pointed out by law and sanctioned by ages of usage. (See *Matter of Soule*, 72 Hun, 594, 597, and authorities there cited.) "* To the same effect is *Matter of Barnum* (129 App. Div. 418).

* The Code sections herein cited were respectively revised by Code Civ. Proc. §§ 2754, 2756, 2742, 2490, as amd. by Laws of 1914, chap. 443; now Surr. Ct. Act, §§ 288, 293, 274, 20.— [REP.

The respondent Bank of the Manhattan Company practically concedes that the surrogate's action herein may not be sustained under section 20 of the Surrogate's Court Act. It asserts that that section and the cases relating to it have no pertinency. Its point is that these cases concern a situation where an application was made after the time for appeal had expired. It argues that there is no difference between what the surrogate did here and what the surrogate might have done before the expiration of the time within which an appeal might be had, if a motion for a reargument had been made within that period. It further asserts that a Supreme Court justice could do that which the surrogate did, and that the Supreme Court practice is to be assimilated to the Surrogate's Court. The difficulty with that approach to the problem presented is that the practice of the Supreme Court, so far as it is to be assimilated to the practice in the Surrogate's Court, is to " be exercised only in a like case, and in the same manner, as a court of record and of general jurisdiction exercises the same powers." (Surr. Ct. Act, § 20, subd. 6.)

Nor does section 316 of the Surrogate's Court Act (as amd. by Laws of 1922, chap. 653) aid the respondent. It provides:

" § 316. Certain provisions made applicable to proceedings in Surrogates' Courts. Except where a contrary *intent is expressed in, or plainly implied from the context of this act,* a provision of law or of rules, applicable to practice or procedure in the Supreme Court, applies to Surrogates' Courts and to the proceedings therein, so far as they can be applied to the substance and subject matter of a proceeding without regard to its form."

It is to be noted that the foregoing italized matter limits that provision, as does the above-quoted latter part of subdivision 6 of said section 20 of the Surrogate's Court Act limit that subdivision.

This latter clause does not take precedence over express statutory directions such as are contained in section 20 of the Surrogate's Court Act. To give it the effect which the respondent urges we are confronted with the fact that the Supreme Court procedure in a somewhat analogous situation to set aside a judgment for error in fact, etc., requires that the court may only act when moved on notice, since it is so expressly provided in the Civil Practice Act:

" § 527. Notice of motion; how given. Notice must be given, in a case specified in the six preceding sections, by personal service of a written notice, or of an order to show cause, except that if a person entitled to notice cannot be found within the State, with due diligence, notice shall be given in any manner which the court or a judge thereof directs."

In the instant case the requirement that the court be moved on notice was not complied with. This leaves, therefore, the distinction urged that because the surrogate acted of his own motion within the period of time within which an appeal could have been had, the cases hereinbefore referred to have no application. This squarely presents the right of the surrogate to sit in review of himself with respect to judicial errors, without being moved so to do by any party to the litigation. There is no provision in the Surrogate's Court Act that authorizes him so to do and his powers are purely statutory. I think he is in the same position as a justice of the Supreme Court similarly situated, who would be without power to sit in review of his own alleged judicial errors without being moved to do so within the time required on such motions.

I do not believe orderly practice warrants the holding that a court has the power to act of its own motion and have that deemed to be the equivalent of a motion made by a party to the litigation. To so hold would tend to interminable uncertainty.

Of course, there are individual instances where adhering to the rule that the judge should be deemed *functus officio* after the signing of a decree, except in instances clearly provided for, works great hardship, but individual instances of hardship do not warrant ignoring the fact that hard cases make bad law.

For the reasons stated by this court in *Matter of Peck (supra)*, it should be held that the surrogate was without power to make the May 17, 1927, decree. Moreover, the principle of *Herpe* v. *Herpe* (225 N. Y. 323, 327) is conclusive. The court there said: " The court had not the power to amend the judgment by awarding the costs of the action to the plaintiff. The rule has long been settled and inflexibly applied that the trial court has no revisory or appellate jurisdiction to correct by amendment error in substance affecting the judgment. It cannot, by amendment, change the judgment in matter of substance for error committed on the trial or in the decision, or limit the legal effect of 'it to meet some supposed equity subsequently called to its attention or subsequently arising. It cannot correct judicial errors either of commission or omission. Those errors are, under our system of procedure, to be corrected either by the vacating of the judgment or by an appeal." (The court cited cases for the foregoing and declared that precedessors of what are now sections 105 and 108 of the Civil Practice Act were of no avail to the contrary.)

There is no need for inquiring into the facts with regard to the propriety of the amount of the allowance, as to whether it was justified or not; that may only be considered in accordance with

proper procedure. Whether other procedure is available to vacate the decree may not be passed upon at this time.

In my opinion, there is no alternative but to reverse, upon the law, without costs, the decree of the Surrogate's Court of Westchester county, dated May 17, 1927, so far as it purports to modify the decree of April 8, 1927, and to reinstate the decree of April 8, 1927, without costs.

LAZANSKY, P. J., YOUNG, HAGARTY and SEEGER, JJ., concur.

Decree of the Surrogate's Court of Westchester county, dated May 17, 1927, in so far as it purports to modify the decree dated April 8, 1927, reversed upon the law, without costs, and decree dated April 8, 1927, reinstated, without costs.