In the Matter of the Estate of JUSTINA A. DRONEY, Deceased. NATIONAL BANK OF FREDONIA and Another, as Administrators with the Will Annexed of JUSTINA A. DRONEY, Deceased, and Another, Appellants; BERNARD FERRIS and Others, Respondents.

Fourth Department, March 4, 1931.

*William S. Stearns*, for the appellants.

*Edwin G. O'Connor*, for the respondents.

TAYLOR, J.   The executor of the will of Justina A. Droney died and the National Bank of Fredonia and John F. Sisley were appointed administrators with the will annexed.   In the will the testatrix gave any portion of her estate remaining after her husband's death " to the surviving children of my three brothers, Fulton Ferris, George Ferris and Benjamin Ferris, and my sister Harriet Sisley, share and share alike."   This was a gift to the nephews and nieces of the testatrix *per capita*.   (*Stevenson* v. *Lesley*, 70 N. Y. 512; *Matter of Verplanck*, 91 id. 439.)

The estate was administered and in a proceeding to obtain a judicial settlement of the account of such administrators — all interested parties having been cited — the Surrogate's Court made a decree dated September 11, 1929, in which it was adjudicated that the surviving children of the three brothers and one sister of the testate — eleven in all — were entitled to receive *per stirpes*. Distribution was made *per stirpes*, as specified in detail in the decree.   The administrators paid to or for the five surviving children of Fulton Ferris $228.42 each; to the three surviving children of Benjamin Ferris $380.70 each; to the two surviving children of Harriet Sisley $571.08 each; and to the one surviving child of George Ferris $1,142.17, the total amount distributed being $4,568.64. This would have been $415.33 apiece *per capita*.   The administrators received vouchers from all distributees, made and filed

their final report, and on October 31, 1929, a decree was entered discharging the administrators and their bail from all further liability. " A judicial settlement of the account of an .* * * administrator * * * by the decree of the Surrogate's Court * * * is conclusive evidence against all the parties of whom jurisdiction was obtained and all persons deriving title from any of them at any time, as to all matters embraced in the account and decree." (Surr. Ct. Act, § 274.)

On April 14, 1930, upon application of four of the five children of Fulton Ferris and notice to the administrators and their surety, and after a hearing had without notice to the other distributees, the Surrogate's Court made another decree in which the decree of October 31, 1929, was " opened and modified " and the administrators were directed to pay to each of the movants, viz., Bernard, Kale K. and Melvin Ferris, and Belle Laydon, $186.90 additional, making the total amount to be received by each of them $415.33, one-eleventh of $4,568.64. An opinion accompanied this decree in which it was stated that the first decree was modified pursuant to the provisions of section 20, subdivision 6, of the " Surrogate Practice Act " (Surrogate's Court Act). Section 20, subdivision 6, of the Surrogate's Court Act empowers that court " to open, vacate, modify, or set aside, or to enter as of a former time, a decree or order of his court; or to grant a new trial or a new hearing for fraud, newly discovered evidence, clerical error, or other sufficient cause." This sentence is added: " The powers conferred by this subdivision must be exercised only in a like case, and in the same manner, as a court of record and of general jurisdiction exercises the same powers." This is the only section of the Surrogate's Court Act furnishing direct authorization to disturb decrees, and it has been frequently held that the section may be invoked only in instances of fraud, clerical error or newly-discovered evidence, the words " or other sufficient cause," meaning " cause " ejusdem generis. The subdivision does not reach mistakes of law. They may be corrected only by appeal. (Matter of Starbuck, 221 App. Div. 702; affd., 248 N. Y. 555; Matter of Brennan, 251 id. 39; Matter of Tilden, 98 id. 434; Matter of Griffin, 210 App. Div. 564; Matter of Hermann, 178 id. 182; affd., 222 N. Y. 564; Matter of Peck, 131 App. Div. 81.)

On September 1, 1914, section 2510 of the Code of Civil Procedure (as amd. by Laws of 1914, chap. 443), which was the antecedent of section 40 of the Surrogate's Court Act, went into effect. The first (unnumbered) paragraph of this section provides that every surrogate holds a court which, " in addition to the powers conferred upon it, or upon the surrogate, by special provision of law," has jurisdiction " to administer justice in all matters relating to the affairs of dece-

dents, and upon the return of any process to try and determine all questions, legal or equitable, arising between any or all of the parties to any proceeding, \* \* \* as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires." This provision was re-enacted by section 40 of the Surrogate's Court Act (Laws of 1920, chap. 928), which took effect on October 1, 1921. (See Laws of 1921, chap. 201, amdg. Surr. Ct. Act, § 319.)

In 1921 (Chap. 439) the Legislature inserted in said section 40, at the end of the quoted paragraph, a clause to the effect that powers specifically given to the surrogate or to the Surrogate's Court shall be " in addition to and without limitation or restriction on the foregoing powers." (See, also, Laws of 1924, chap. 100, amdg. said § 40.)

The courts have not been in accord as to the scope of this section; but the call for a liberal construction is emphatic. (*Matter of Raymond* v. *Davis*, 248 N. Y. 67, 72.)

In *Matter of Fuller* (227 App. Div. 801; affd., 254 N. Y. 519, without opinion) the Appellate Division, Second Department, reversed a surrogate's decree and ordered a former decree opened and modified " in the interests of justice," writing a memorandum acknowledging the limited scope of section 20, subdivision 6, of the Surrogate's Court Act, and citing in that behalf *Matter of Brennan* (*supra*). This was apparently done under the broad powers given by sections 40 and 309 of the Surrogate's Court Act. And the facts involved in that proceeding were such that we recognize the determination there as authority for opening the original decree made in the instant proceeding. A material mistake had been made which could not be reached by an appeal, and the only method of arriving at justice was to act under the powers given by the statutory sections last mentioned.

It is the ordinary rule, applicable to Surrogates' Courts, that if those who have due notice of legal proceedings in which they are interested make default, they have no right of appeal; their only remedy is to move to open their default, and then they must show good reason for being given another opportunity to assert their rights. (Surr. Ct. Act, § 20, subd. 6; Id. § 288; Civ. Prac. Act, §§ 1, 105, 108; *Utica Gas & Electric Co.* v. *Sherman*, 212 App. Div. 472.) The respondents have adopted the correct procedure and have succeeded in obtaining a decree awarding them their *per capita* portions. The other distributees have accepted the shares apportioned to them under the court's decree, apparently in reliance upon its legal correctness. As the proceeding gets to this court,

there is more of injustice than justice in the result. Three distributees have more than their lawful share, the others less, except that if the decree appealed from were allowed to stand and its commands were obeyed, the respondents would each have his *per capita* share. And the administrators, who have proceeded in exact accordance with the decree of the court having control over them, are commanded to make additional payments to respondents out of their own pockets. But respondents, in their application to open the first decree, failed to present any excuse for their default. Their application was based solely upon an affidavit of their attorney, which indicated that the will had been wrongly construed, but stated no reasons why respondents did not appear in court on the day of the accounting. Still, since no interests of persons not parties to the proceeding seem to be involved, and it being clear that an unjust distribution has been made, we conclude that if these respondents — or any other distributee — can make a proper showing under the rules and practice of the court, the surrogate has power to open the decree and is not barred from so doing by section 20, subdivision 6, of the Surrogate's Court Act.

We, therefore, reverse the decree appealed from, with costs of this appeal to appellants, payable out of any part of the original distributable fund which may come back into their hands. And in case a showing be made before the Surrogate's Court within a reasonable time by one or more distributees, which will warrant such action, the original decree should be opened, notice should be given to all interested parties, a new hearing should be had, and, unless good reason shall then appear for not so doing, a decree should be entered directing all distributees to pay back to the administrators all moneys received in this proceeding, and directing distribution *per capita* of all funds remaining after payment of costs. The power to do all this is vested in the Surrogate's Court (Surr. Ct. Act, § 40; *Matter of Wiemann*, 119 Misc. 239; *Matter of Morris*, 134 id. 374).

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Decree reversed on the law and matter remitted to the Surrogate's Court for further eventual proceedings in accordance with the opinion, with costs to appellants payable contingently out of the estate.