In the Matter of the Estate of CHARLES E. HAYDEN, Deceased.

Surrogate's Court, New York County, July 5, 1941.

*McDonald & McDonald* [*D. Ray McDonald* of counsel], for the petitioner Theresa Boland.

*Benjamin Young* [*George L. Livingston* of counsel], for the respondent Joseph McGeary.

*Joseph A. Cox,* for the public administrator of the county of New York.

FOLEY, S.   The petitioner, Theresa Hayden Boland, on behalf of herself and her two sisters, Hattie Hayden Jenks and Mary Hayden Boland, applies to reopen the decree dated May 29, 1940, settling the account and directing distribution of the balance of the estate to Joseph McGeary, a maternal first cousin of the decedent.   That decree was based upon the then unchallenged proof that Joseph McGeary was the sole next of kin.   The petitioner claims that she and her sisters are paternal first cousins and that the distribution previously ordered should be corrected by the opening and modification of the decree, that a determination be made that the applicants are included within the class of next of kin and are each entitled to payment of one-fourth of the net estate.   They concede the status of Joseph McGeary as the fourth statutory distributee, but seek to obtain from him repayment of the sum of $30,861.48 which they assert was the overpayment to him directed by the decree sought to be reopened.

The estate was administered by the public administrator.   It is admitted that neither he nor his attorney had any knowledge or information before the entry of the decree as to the claims of the applicants.   The petitioner and her sisters were not made parties to the accounting proceeding and their first formal intervention was made after the decree by the pending application.   A hearing was ordered by the surrogate for the purpose of taking proof on the status of the petitioner and her two sisters in support of their assertions that they are paternal first cousins of the decedent and entitled to share in the distribution of the estate.   The trial proceeded as if the original claims of the applicants were before the court in the accounting proceeding.   The well-established practice was thereby followed in proceedings where the status of a claimant to kinship must be proved as a preliminary step in the proceeding.   (*Matter of Cook,* 244 N. Y. 63; *Matter of Leslie,* 175 App. Div. 108; 195 id. 571; *Matter of Wendel,* 143 Misc. 480; *Matter of Wood,* 162 id. 497; 164 id. 425.)

The petitioner and her sisters are residents of Chicago, Ill. Their testimony was taken upon depositions. Other evidence, principally in the form of documentary proofs, was offered by the contending parties. As is customary in question of kinship, it consisted of pedigree records and particularly birth, baptismal, marriage and death certificates, census records, extracts from city directories and other instruments.

The surrogate finds upon the evidence that the petitioner and her two sisters have established their status as the paternal first cousins of the decedent.

The rules applicable to pedigree cases involving proof of the identity of a person have been frequently stated. Their object is to lead the trier of the facts to a reasonable conclusion. Pedigree is the lineage, descent and succession of families. (*Washington* v. *Bank for Savings*, 171 N. Y. 166.) The primary rule of evidence emphasizes the progressive value of proved coincidences and circumstances based upon undisputed facts, all pointing to only one conclusion. (*Matter of Wood, supra.*) A single and independent undisputed fact or coincidence is seldom of value. The accumulation of coincidences and undisputed facts and records, when bound together, multiplies the convincing quality of the entire case. (Wigmore on Principles of Judicial Proof, p. 64.) In cases of this kind the pieces of evidence fit together in a perfect picture, like a mosaic, when status is established. On the other hand, where corelation or co-ordination of the pieces is absent, the fictitious nature of the claim of the pretender to kinship is revealed. (*Matter of Wendel*, 146 Misc. 260.)

In the present proceeding it is an undisputed fact that the father of the decedent was Loftus C. Hayden. His first name was unusual and distinctive. He came to America from Ireland. It has been established that he lived in the city of Chicago for some years prior to 1862. In that year he enlisted in an Illinois infantry regiment in Chicago for service in the Civil War. The records of his army service are revealed in the application of his wife, the mother of the decedent, made in the year 1890, for a pension as the widow of a soldier of the United States Army. He died on December 13, 1882, in New York city. The application was denied by the Federal Commissioner of Pensions upon the records of the War Department which showed that he had deserted from the army in February or March, 1863, in Tennessee. A request for the removal of the charge of desertion and for the granting of an honorable discharge was denied because of the lack of evidence to justify it. It is significant that the name used by the decedent's father upon his enlistment

was " Loftey " or " Lofty " C. Hayden. The variations of the name become of importance when compared with other documentary evidence in the case.

The petitioner has shown that she and her sisters were the children of Edward Hayden and Sarah Connors. They were born in the city of Chicago. The surrogate finds that their father, Edward Hayden, and Loftus C. Hayden, the father of the decedent, were brothers. These two brothers were the sons of John Hayden, the common ancestor of the claimants and the decedent.

The directory of the city of Chicago for 1862–1863 showed that " Lofty Haydon," a painter, was employed at the Illinois Central Railroad car shop. I have pointed out in the prior part of this decision that the first name used by the father of the decedent on his enlistment in the Union Army was " Lofty." The similarity of names is a proved coincidence. In that same directory there appears the name of Edward Hayden, a bricklayer, whose home was located on the south side of Barber street, between Canal and South Jefferson streets. In the city directory for the year 1863 there appears the name of " Loftis Hayden," a painter, whose home was located in the identical block given as the address of Edward Hayden in the prior directory, that is, on the south side of Barber street, between Jefferson and Canal streets. The name of Edward, the bricklayer, does not appear in the later directory. The inference reasonably follows from these records, however, that Edward Hayden, the father of the claimants, and Loftus C. Hayden, the father of the decedent, lived together. It also supports with the other evidence in the case the conclusion that they were brothers. That fact is also substantiated by the testimony submitted on behalf of the claimants as to pedigree declarations of the family coincidence.

There is another significant element of proof which establishes the relationship as brothers of Loftus C. Hayden and Edward Hayden. It is found in the baptismal record of John Hayden, a son of Edward Hayden, the father of the claimants and the uncle of the decedent. The records show that the child was born on February 24, 1859, and that his parents were Edward Hayden and Sarah Connors. I find that they were also the parents of the claimants. The name of " Loftis Haydon " is recorded as one of the sponsors and as the godfather of the child. There is a slight disparity in the name " Loftis " from the name customarily used by Loftus C. Hayden, although it should be noted that he gave the names " Loftey " or " Lofty " when he enlisted in the army and that the directory of 1863 described him by the same first name " Loftis " as used in the baptismal record. Moreover, this baptis-

mal record showed the correct spelling of his brother's last name — Edward Hayden. The spelling " Haydon," the last name of Loftus, was plainly a clerical error.

The proved coincidence of the brother of the father of the child acting as his sponsor and godfather accords with well-recognized family and religious custom in cases of baptism in the Roman Catholic faith. Again, it adds weight to the inevitable conclusion of a fraternal blood relationship.

These three undisputed records consisting of (a) the pension application and the army service record of Loftus C. Hayden, (b) the Chicago directories, and (c) the baptismal record, are of special importance because of the unusual and distinctive character of the first name — Loftus. The directories of Chicago and of New York in the period when Loftus C. Hayden lived in these cities, show only a single person of that name. Those documentary proofs of the relationship of the family of the decedent to the family of the claimants make their testimony, as to pedigree declarations by the members of their family, competent pedigree evidence under the rule laid down in *Aalholm* v. *People* (211 N. Y. 406). Under that rule declarations made by deceased persons may be received in pedigree cases. The ordinary prohibition against hearsay evidence does not operate against the reception of such declarations. As stated in the *Aalholm* case, the rule as to the admissibility is subject to three essential conditions: (1) The declarant must be dead; (2) they must have been made *ante litem motam*, that is, at the time when the declarant had no motive to distort the truth; (3) the declarant must be related by blood or affinity to the family concerning which he speaks. Finally, the admissibility of declarations requires that the relationship of the declarant to the decedent must first be established by independent evidence before the declaration becomes competent. (*Aalholm* v. *People, supra; Matter of Wendel, supra; Matter of Findlay*, 253 N. Y. 1; *Eisenlord* v. *Clum*, 126 id. 552; *Young* v. *Shulenberg*, 165 id. 385; *Washington* v. *Bank for Savings, supra; Blackburn* v. *Crawfords*, 3 Wall. 175.)

The surrogate, therefore, holds that the declarations which were testified to by the petitioner and her sisters became competent and admissible in the present case because of the undisputed independent proof showing that the father of the decedent and their father were brothers. There are certain inconsistencies in the testimony of the claimants, but most of them may be attributed to their advanced years, for each of them is over the age of seventy. These apparent inconsistencies are inconsequential. They do not impair credibility.

The testimony of family declarations has also been supported by documentary evidence. The respondent, Joseph McGeary, and his counsel have attempted to attack the entire case of the claimants because of an alteration of a certain baptismal record, other than the record referred to previously in this decision. I find nothing sinister in it. It has been sufficiently explained.

The application to reopen the decree is granted.

The respondent, Joseph McGeary, has been paid an amount in excess of his intestate share of one-fourth as one of the four statutory distributees   The petitioner and her sisters have established their status as the three other distributees. In the decree the respondent was determined to be the sole next of kin and was paid the entire balance of the net estate. This determination has now been proved erroneous. Pursuant to the provisions of section 267 of the Surrogate's Court Act he is directed to return the excess over his lawful share of the estate. That excess is $30,861.48, which is three-fourths of the total amount received by him. Payment is directed to be made to the public administrator who will disburse to the petitioner and her two sisters their respective quarter shares of the total of the net balance of the estate.

Submit decree on notice accordingly.