William T. Collins,
S. Jacob Tim died intestate in Miami, Florida on June 4, 1954, leaving an estate situated both in Florida and in this State. A curator of his estate was appointed in Dade County, Florida, while this court issued letters of administration to the Public Administrator of New York County. A conflict resulted as to the domicile of the decedent and the administration of his estate. It was settled by agreement which has been approved in both jurisdictions.
On February 9, 1956, the Public Administrator filed his account and requested a direction that the balance of the assets in Ms possession be paid into the city treasury upon the ground that the distributees of the decedent were unknown. Numerous objections have been filed by persons claiming kinship to the decedent. Among others, they include two separate groups of objectants, each of whom claimed the same degree of relationship to the decedent — nieces, nephews, grandnieces and grandnephews— through two unrelated families bearing the same name.
The decedent was born in Brest-Litovsk (formerly Poland, now within the territory of U. S. S. R.) in 1872, and emigrated to this country in or about 1889. He was then about 17 years of age. There was some proof that a number of years after his arrival in this country he changed Ms name from “Timiansky” to “Tim”. In passport applications, he gave his father’s name as Samuel Tim. None of these applications reveals the name of his mother. However information on a signature card of the decedent in an account with a savings bank shows the name of his mother to be “Rebecca”. Decedent was engaged in the cap business in New York City until some time in 1933.
For convenience, the two contending groups of objectants under consideration will be referred to as the Poses group and the Rudawski-Timiansky group. The Poses group asserts that decedent’s mother was named Feige Timiansky who left BrestLitovsk in or about 1910 for Palestine, where she died several years later. The members of the Poses group were unable to furMsh the name of the father, who is claimed to have died many years earlier. They claim that the decedent had one brother and three sisters. The RudawsM-Timiansky group names the *51 decedent’s father as Schmuel or Samuel Timiansky, who died some time after 1910. The name of decedent’s mother, who was said to have died many years earlier, was unknown to them. They, on the other hand, assert that decedent had three brothers and one sister.
Obviously these two sets of objectants were describing two separate families in Brest-Litovsk, who bore the same family name.
As in all cases involving pedigree and the distribution of intestate property, there must first be established the identity of the common ancestor. Until such identification is made, no family tree can be traced, and no judicial determination of pedigree can be made. It is known from decedent’s passport applications that his father’s name was Samuel. While the applications described the father’s name as Samuel Tim, it appears from the testimony of a disinterested witness that the family name was Timiansky, and that it was changed by the decedent to Tim some years after his arrival in this country. Decedent was of the Jewish faith, and it appears that in the Jewish settlement of Brest-Litovsk the name Timiansky was not uncommon.
Most of the evidence upon which the objectants rely is in the form of oral pedigree hearsay declarations. Such declarations concerning pedigree are admissible as an exception to the hearsay rule provided (1) the declarant is dead, (2) the declaration was made ante litem motam, and, (3) the declarant was related either by blood or affinity to the family concerning which he speaks. (Young v. Shulenberg, 165 N. Y. 385; Aalholm v. People, 211 N. Y. 406; Matter of Morris, 277 App. Div. 211; Matter of Whalen, 146 Misc. 176; Matter of Wendel, 146 Misc. 260; Matter of Wood, 164 Misc. 425; Matter of Hayden, 176 Misc. 1078.)
Before the declarations can be received, the relationship of the declarant to the family of the decedent must first be established by independent proof, although slight proof is sufficient. (Aalholm v. People, supra, pp. 413, 419; Matter of Morris, supra, pp. 213, 215; Matter of Wendel, supra, pp. 265, 266.)

THE POSES OBJECTANTS.

As noted above, these objectants were unable to name the father of the decedent. Their starting point in the family tree is Feige Timiansky who resided in Brest-Litovsk until 1910 when she left for Palestine. Feige had five children — Lana, Schrulke or Israel, Miriam, Yankel or Jacob (claimed to be the decedent), and Liebe. Mrs. Vera Poses, a daughter of Lana and a grand *52 daughter of Feige Timiansky, testified that her parents spoke frequently of Yankel Timiansky (the alleged decedent) having left his family in Brest-Litovsk to avoid military service. As a young child, she knew her grandmother Feige intimately. She knew all of her grandmother’s children, with the exception of Yankel Timiansky, who was no longer in Brest-Litovsk in the early 1890’s. Mrs. Poses testified further that when she came to this country, she was told by one of her sisters, who had preceded her here and who has since died, that in 1910 she had visited Jacob Tim, at which time she received from him two knitted caps for her boys. In the conversation with her deceased sister, Jacob Tim was referred to as “Uncle Jack”.
Mrs. Rifke Buis, a niece of Feige Timiansky, testified that she was told by her aunt that her aunt’s son, Yankel, had stolen money from her grocery store and had disappeared; that Feige’s son, Schrulke, had spoken of having written to a relative in the United States to have him ask his rich brother, Yankel, for money; that in 1922 Schrulke, who was then living with her in Poland, asked a visiting relative from this country what had happened to his brother, Yankel, and was told by this relative that he had gotten money from him for “Brisker Relief ”; and that at a family gathering attended by her aunt Feige, mention was made of Jacob Timiansky who was in the United States.
Jacob Tim, an alleged nephew of decedent and one of the objectants herein, testified that two years before his departure from Brest-Litovsk (about 1907) his father, Schrulke Timiansky, spoke of his brother as a wealthy manufacturer in New York.
There was also testimony by and on behalf of the Poses objectants quoting deceased members of the family as having referred to Jacob Tim, (the alleged decedent), as their wealthy uncle, and having mentioned the fact that he made caps for young boys.
The admissibility of these hearsay declarations depends upon the existence of independent evidence connecting the declarants with the family of the decedent. These objectants contend that the documentary proof of the decedent’s place of birth, the date of his departure from Brest-Litovsk, his occupation as a cap manufacturer, and the location of his business, coincide with the testimony which they and their witnesses gave at the trial. They maintain that a son of Feige Timiansky, named Yankel or Jacob, had left Brest-Litovsk some time prior to the early 1890’s that he was visited by members of their Timiansky family in New York *53 at his place of business where he manufactured caps, and that several members of the family, after emigrating to this country, shortened their name to Tim. Finally, they argue that there is a strong resemblance between the photographs of the decedent and one of the granddaughters of Feige Timiansky.
While the required independent evidence connecting the declarants with the decedent’s family need only be “slight”, yet it must be of a nature which permits formation of a rational judgment. (Matter of Hayden, 176 Misc. 1078, 1080, supra.) It must be such that unaided by the pedigree declarations it furnishes independent evidence of the claimed relationship of the declarants to the family of the decedent.
“ The identity of names, religion and nativity are too common to be alone sufficient evidence of family connections ”. (Aalholm v. People, 211 N. Y. 406, 419, supra; Matter of Whalen, 146 Misc. 176, 190, supra.) This rule has peculiar application to this case where it appears that the family name, Timiansky, was quite common in the Jewish settlement of Brest-Litovsk. According to one of the witnesses, there were many families in BrestLitovsk who bore the name Timiansky.
The Poses case rests upon' the claim that Feige Timiansky has a son named Yankel or Jacob, who left Brest-Litovsk as a young man at a time which coincides with the date of decedent’s departure from Brest-Litovsk.
It is significant that in the early family conversations there was no reference to her son’s occupation or to his precise whereabouts. It is possible that it was not until members of the family came to this country that it became known that a Jacob Tim was engaged in the cap manufacturing business in New York City and that, seizing upon the familiarity of names, they concluded that the decedent was their missing relative. Here again, apart from the hearsay declarations, decedent’s occupation and the location of his business are not proof that he was a member of their family.
Thus, disregarding the identity of names, religion and nativity, there was no independent evidence which connects the declarants with the family of the decedent. The fact that a number of descendants of Feige Timiansky who resided in New York visited or attempted unsuccessfully to visit the decedent at his place of business is without sufficient probative significance. The similarity of names may well have led them to suppose that decedent was their relative. They lived in the same city as did the decedent for many years, and it would normally be expected that during this long period of time there would be some ac *54 knowledgment from the decedent of his kinship to them. There is no evidence of such acknowledgment. It is suggested by some testimony that when decedent left Brest-Litovsk he was aggrieved at certain members of his family. It is also suggested that it is not uncommon for a wealthy person to shun his poor relatives. But all of this is sheer speculation.
The fact that he was visited by one or more of his claimed relatives and that he persistently refused to see others is not inconsistent with a belief that they were not related to him. Absent therefore any acknowledgment by decedent of the claimed relationship, these visits are without significance.
The fact that some members of the Timiansky family, upon emigrating to this country, shortened their name to Tim, is also without significance. It is not an uncommon practice among immigrants who come to this country with long names to shorten them. Nor do the photographs in evidence furnish any independent proof that the declarants were connected by blood or affinity to the decedent’s family. Evidence of facial or physical resemblance is valueless, for experience has demonstrated that such evidence is neither accurate nor reliable. (Matter of Wendel, 146 Misc. 260, 268.) As Judge Foley stated in the Wendel case ‘ ‘ What is taken as resemblance by one is not perceived by another, with equal knowledge of the parties between whom the resemblance is supposed to exist ”. There can be no honest dissent from this view. In any event, I have inspected the photographs and perceive in them no resemblance to each other, contrary to the opinion expressed by the attorney for the Poses objectants that there is a striking resemblance between the two.
The hearsay declarations adverted to above do not have sufficient probative value to establish the claimed kinship to the decedent.
While the Poses objectants and their witnesses profess a fairly comprehensive knowledge of the names of the various members of the Timiansky family stemming from Feige Timiansky, they all disclaim knowledge of the name of Feige’s husband, who is said to have died some time before the early 1890’s. Mrs. Poses and Mrs. Buis were on intimate terms with their relative, Feige Timiansky. There were gatherings of the family attended by Feige at which matters of interest to the family were discussed. Common experiences would suggest that on some occasion Feige would speak of her deceased husband who had fathered her five children. Yet, according to the witnesses, his name was never mentioned. However, not only do the Poses witnesses reveal a lack of knowledge or information *55 as to decedent’s father’s name, but their testimony as to decedent’s mother’s name is at variance with the documentary evidence. The documentary evidence shows that the decedent’s mother’s name was “ Rebecca” and not “ Feige ” as claimed by them. The signature card of the decedent in an account opened by him on February 2, 1932, with the Emigrant Industrial Savings Bank, received in evidence, which contains the name “ Samuel ” as the father of decedent, “ Brest-Litovsk ” as the decedent’s place of birth, and Rebecca ” as the mother of decedent, must be deemed credible evidence particularly since the father’s name and the decedent’s place of birth correspond with the known facts.
Since there is no independent evidence connecting the declarants with the family of the decedent, the pedigree declarations are without effect.
Upon this state of the record, no reasonable conclusion can be drawn that the decedent was a member of the Timiansky family described by the Poses objectants. Their objections to the account are overruled and their claims dismissed.

THE BUDAWSKI-TIMIANSKT OBJECTANTS.

This group consists of Fishel Rudawski and his sister Liza Kahane, both residents of Israel, and their brother Jacob Roden, who resides in Italy. It includes also Jacob and Zorah Timiansky, both of whom reside in Israel. The testimony by and on behalf of these objectants taken in Israel upon an open commission was received in evidence at the trial. Certain exhibits were offered in evidence, and they will be discussed later. The testimony discloses that objectants Fishel Rudawski, Liza Kahane and Jacob Roden are the children of Cedalia Rudawski and the grandchildren of Sarah Feige Rudawski (nee Timiansky). Their grandmother was the daughter of Samuel Timiansky who died some time after 1910. Samuel Timiansky also had four sons, Yerachmiel, Abraham, Aron and Jacob, who is claimed to be the decedent. The objectants, Zorah and Jacob Timiansky, are the sons of Aron Timiansky, and the grandsons of Samuel Timiansky. It appears that Samuel Timiansky was married more than once. The Rudawski-Timiansky object-ants were unable to state the name of the mother of each of Samuel’s five children.
One Dina Ginzburg testified on behalf of these objectants. She stated that she was about 80 years of age when testifying in August, 1955. She therefore must have been born about the year 1875. She testified that when she was about 14 years old, she frequently visited her friend, Sheina, at the home of *56 Sheina’s mother, Sarah Feige Budawski. On a few of these visits, she met Sarah Feige’s father, who was named Schmuel (Samuel). On some of these visits, she also met a brother of Sarah Feige named Jacob who was then about 16 or 17 years of age. She overheard Jacob complain to his sister of being mistreated by their stepmother. She also heard them speak of Jacob’s plans for leaving for America.
Mrs. Ginzburg testified further that after Jacob’s departure, his sister Sarah Feige grieved but later was happy when she received a letter from him. This witness was subjected to an extensive cross-examination and in the main, the essentials of her testimony were unshaken. She was the only witness who claims to have seen Sarah Feige Budawski’s brother Jacob in Brest-Litovsk, and her description of his height and complexion was not at variance with the known facts.
Mrs. Ginzburg’s testimony is sufficient to furnish some connecting link between the decedent and the family of Sarah Feige Budawski by proof independent of the hearsay declarations. (Matter of Morris, 277 App. Div. 211, supra.) The date of the pending departure of Sarah Feige’s brother Jacob from Brest-Litovsk, as given by Mrs. Ginzburg, coincides with the known fact that decedent left that city in or about 1889. The age of Sarah Feige’s brother Jacob at that time also coincides with the fact that decedent was then about 17 years of age. The name Schmuel, which is the Yiddish equivalent of Samuel, was given by Mrs. Ginzburg as the name of the father of Sarah Feige; This coincides with the fact that the name of the decedent’s father was Samuel. These coincidences go beyond identity of name, nativity and religion. They furnish a rational basis for the conclusion that the young man described by Mrs. Ginzburg and the decedent were one and the same person.
There remains the question whether the Budawski-Timiansky objectants have established their membership in the Timiansky family of the decedent.
The testimony of Fishel Budawski so far as pertinent may be summarized as follows: He was born in Brest-Litovsk in 1919. His parents were Gedalia and Bachel Budawski. He had three brothers and one sister. The brothers were named Shlomo, Motel and Jacob. His sister’s name was Liza. He, Liza and Jacob are the objectants herein.
Fishel’s grandmother, Sarah Feige Budawski, lived with them. He heard his grandmother speak of her brothers Yeraehmiel Timiansky, Abraham Timiansky, Yacov Timiansky and Aron Timiansky. He heard his grandmother speak of her *57 brother Yacov having left for America when he was very young. He recalled his grandmother receiving letters from America and was told they came from her brother.
Fishel learned from his parents that the name of Sarah Feige’s father was Schmuel. He had occasion to enter the name in the family register which was required to be kept in order to record the goings and comings of residents who remained away from their home for at least three days. He remembered having entered the departure and arrival of Sarah Feige Rudawski upon an occasion when she visited a relative in another city. He entered her name and the first name of her father.
Sarah Feige’s three brothers who remained in Poland each owned some real property in Brest-Litovsk. During the absence of her brother, Abraham Timiansky, his nephew Gedalia Rudawski (Fishel’s father) managed his real property. Fishel saw a sign on the house which read ‘ ‘ The House of Timiansky, the Heir Rudawski ”. There were times when Fishel collected rents on behalf of his father. After the death of Abraham, one of Abraham’s daughters, named Filia, visited the Rudawskis.
Fishel also recalled that in 1918 or 1919 four or five children of Aron Timiansky visited his home. There was offered in evidence a number of documents which established parentage of Fishel and his place of birth. Fishel left for Israel in 1930. He was followed two years later by his sister Liza. In 1935, his mother and younger brother Jacob (Roden) arrived in Israel. The mother died in 1954. Jacob Roden lives in Italy. Fishel’s brothers Shlomo and Motel remained in Poland and were not heard from after 1939.
Liza Kahane, the sister of Fishel, corroborated much of her brother’s testimony. In connection with her testimony, there was offered into evidence a number of exhibits which included a certificate issued to her father, Gedalia Rudawski, at the end of World War I which apparently was necessary to enable him to return from Russia to Brest-Litovsk. There was a reference in this exhibit to his uncle “A. Timiansky ”. The exhibits which were marked for identification included also a letter dated April 20, 1937 from Motel Rudawski, an envelope postmarked Brest-Litovsk April 23, 1937 and addressed to his mother, Rachel, in Israel, and a slip of paper said to have been enclosed with the letter in the envelope. The slip of paper has writings on it in Latin characters “ Tims Corp. 17 St-54W N. Y.” There is also a notation on it in Yiddish ‘ the address of our uncle in New York which Filia gave ”. Liza testified that these *58 papers were found among the personal effects of her mother who had died the year before. Expert testimony concerning the authenticity of these exhibits affirms the probability that they were written in 1937. The court has inspected the papers and finds no sufficient basis for declaring them forgeries. They have the appearance of age. The many crease lines in the paper may have been the result of deliberate crumpling in order to simulate age as one of the experts suggested. They may also be explained by much handling over a long period of time.
Liza testified that her mother received the letter which was written in Yiddish and that she, Liza, recognized the handwritting as that of her brother. Liza’s ability to recall in 1955 receipt of a particular letter by her mother 18 years earlier may be questioned in view of her interest in the proceeding. But since the papers which appear to be authentic were found among the mother’s effects they will be received into evidence along with the other exhibits mentioned above. As indicated above, nothing was heard from Motel who remained in Poland after 1939, although previously thereto he had corresponded with his mother. The extermination of the Jews of Brest-Litovsk by the Nazis was described by one of the witnesses. Judicial notice may be taken of the mass execution of Jews in Poland and other parts of Europe which came under Nazi domination. It is reasonable to conclude from the fact that Motel was known to be in Poland prior to 1940 and has not been heard from since that he has perished along with many other Jews. (Cf. Matter of Frankel, 196 Misc. 268.)
The letter from Motel refers to the address on the slip of paper of Uncle Jacob. The address on the slip of paper was the business address of the decedent in New York at least up to 1933. While the decedent was no longer at that address in 1937, the papers do provide some proof linking the Rudawskis to the decedent.
The pedigree testimony of Fishel and Liza was corroborated in varying detail by a number of witnesses.
Mrs. Rachel Chwoinik, a sister-in-law of Aron Timiansky, testified that she was present at Aron’s marriage to her sister in 1910. At that time Aron was about 29 years of age. Aron’s father, Samuel, and his second wife, who was Aron’s mother, attended the wedding. The wedding was also attended by Aron’s brother Abraham Timiansky, who then appeared to be about 42 years of age. Aron is reported to have said to the witness that he had another brother who lived in America, and a sister. The witness was shown a photograph taken at the wedding, and among those identified was Aron Timiansky, the bridegroom.
*59 Dr. Bulkowstein, another witness, testified that as a young child he had been a close friend of the Rudawski children and visited at their home where he saw Sarah Feige Rudawski. He quoted Sarah Feige as having mentioned that she had a brother Yankel (Jacob) in the United States. Sarah Feige knew that the witness was a stamp collector and on a number of occasions gave him American stamps. He stated that Sarah Feige died when he was about 9 year of age. He further testified that he had met Filia Timiansky, the daughter of Abraham Timiansky, a number of times. He had seen the real property belonging to Abraham Timiansky with the inscription thereon, “ House of Abraham Timiansky, the Heir Gedalia Rudawski ’ ’.
Aron Timiansky, the son of Samuel, was the father of Jacob and Zorah Timiansky, both objectants herein, and both witnesses in Israel. Jacob Timiansky identified his parents in the wedding photograph mentioned above. He testified that he was born in Brest-Litovsk in 1913, and that his father died five years later. Zorah was born in 1917, and for a while after his father’s death, he lived with his aunt, Rachel Chwoinik. Mrs. Chwoinik had testified to like effect.
It appears that Samuel Timiansky, (decedent’s father) was married at least twice, and that he had children by both wives. It is not entirely clear which of the children were born of the first marriage and which of the second. When young Jacob, the decedent, left Brest-Litovsk in or about 1889, he spoke of his stepmother who must have been Samuel’s second wife.
It is clear that there were at least two unrelated Timiansky families in Brest-Litovsk. There is no evidence that decedent acknowleged his relationship to either of these families. Nevertheless, the letter with the enclosure sent from Poland in 1937 identifies the decedent with the Rudawski family. It is supported by the independent proof elicited from Mrs. Ginzburg, the aged and apparently disinterested witness.
From all of the evidence and the reasonable inferences to be drawn therefrom, the court concludes that the objectants, Fishel Rudawski, Jacob Roden and Liza Kahane have established their status as grandnephews and grandniece, respectively, of the decedent, and that the objectants Jacob and Zorah Timiansky have established their status as nephews of the decedent. Further proof will be necessary to determine whether they are the sole distributees.
The claims of all other persons who have filed objections as alleged distributees other than the Rudawski-Timiansky objectants are dismissed.
Submit decree on notice settling the account accordingly.