Carmen COLLINS on Behalf of herself
and on Behalf of her infant daughter
Deborah Collins, Plaintiffs,

v.

Anthony J. CELEBREZZE, Secretary of
Health, Education and Welfare,
Defendant.

United States District Court
S. D. New York.

Jan. 13, 1966.

Solomon J. Freedman, New York City, for plaintiffs.

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, for defendant; Dawnald R. Henderson, Asst. U. S. Atty., of counsel.

FREDERICK van PELT BRYAN, District Judge:

This is an action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare which denied mother's benefits to plaintiff Carmen Collins and child's benefits to the infant plaintiff Deborah Collins. All parties have moved for summary judgment pursuant to Rule 56(a), (b), F.R.Civ.P., on the record before the Secretary.

In order to qualify for mother's benefits an applicant must establish that she is the wage earner's "widow" and that she has in her care the wage earner's "child." 42 U.S.C. § 402(g).

Section 216(h) (1) (A) of the Act, 42 U.S.C. § 416(h) (1) (A), provides:

"An applicant is the * * * widow * * * of a fully or currently insured individual for purposes of this subchapter if * * * the courts of the State in which [such insured individual] was domiciled at the time of death * * * would find that such applicant and such insured individual were validly married * * * at the time he died. If such courts would not find that such applicant and such insured individual were validly married at such time, such applicant shall, nevertheless be deemed to be the * * * widow * * * of such insured individual if such applicant would, under the laws applied by such courts in determining the devolution of intestate personal property, have the same status with respect to the taking of such property as a * * * widow * * * of such insured individual."

Similar tests are provided to determine whether an infant claimant is a "child" entitled to benefits under the Act. 42 U.S.C. § 416(h) (2); 20 C.F.R. § 404.-1101 (1965).

There is no dispute that New York was the domicile of the wage earner William Collins (William) at the time of his death on April 25, 1959. For some ten years prior to his death William and plaintiff Carmen Collins (Carmen) had lived together as man and wife, though without ceremonial marriage. Plaintiff Deborah Collins (Deborah), now nine years old, was born of that union and lived with her father and mother; she now lives with her mother.

A decree of the Surrogate's Court, New York County, dated August 26, 1959, adjudged that Carmen was the "wife" and "widow" of William, and as such was entitled, under New York law, to the household furniture in their home. The decree, entered in a contested proceeding, was predicated upon evidence that William "held respondent [Carmen] out to be his wife" and that "on many occasions during a several year period" Carmen and William "had lived together as husband and wife in the State of Ohio" where common law marriages may be contracted.

The basic question posed in this case concerns the meaning and intent of provisions of the Social Security Act which rely upon state law to prescribe standards for determining the familial status of applicants for benefits. What effect is the Social Security Administration required to give to adjudications of such status by the courts of the state? There has been a great deal of confused thinking on this question.

In the case at bar the trial examiner held a hearing at which the decree of

the New York Surrogate's Court adjudging that Carmen was William's "wife" and "widow" was introduced. Because the Social Security Administration was not a party to the proceedings before the Surrogate, the examiner concluded that the New York decree was not binding upon the Administration and was of no force and effect on the issue of Carmen's marital status. He therefore considered the entire issue de novo on the evidence adduced before him.

On that evidence he found that Carmen had failed to establish a valid common law marriage with William in Ohio.[1] He therefore held that Carmen was not William's widow under New York law, which gives effect to common law marriages only if valid under the laws of another state where the parties resided. See Shea v. Shea, 294 N.Y. 909, 63 N.E.2d 113 (1945). Accordingly, he rejected Carmen's application for benefits for herself and child's benefits for Deborah.

The examiner's decision was affirmed by the Appeals Council and became the decision of the Secretary.

There is authority for the proposition that a state probate decree declaring a claimant to be the widow of the deceased has neither a res judicata nor a collateral estoppel effect as to the Secretary where he was not party to the state proceedings. E. g., Miller v. Ribicoff, 198 F. Supp. 819 (E.D.Mich.1961); Merek v. Flemming, 192 F.Supp. 528 (S.D.Tex.), vacated per curiam on consent, 295 F.2d 691 (5 Cir. 1961); Patten v. Flemming, CCH Unempl.Ins.Rep. ¶ 8985 (D.Conn.

1960); cf. Nigro v. Hobby, 120 F.Supp. 16 (D.Neb.1954). Compare Briggs v. United States, 90 F.Supp. 135, 116 Ct.Cl. 638 (1950).

I have no quarrel with these cases if they are confined to principles of res judicata or collateral estoppel. The United States generally is not bound by earlier litigation unless it was represented by a delegate with authority to appear on behalf of its interests. E. g., Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 402–403, 60 S.Ct. 907, 84 L.Ed. 1263 (1940); Fennell v. United States, 67 F.2d 768 (5 Cir. 1933). Moreover, a party contesting a state probate proceeding ordinarily does not have interests of "substantial identity" with the Secretary so as to include him within rules of res judicata or collateral estoppel under traditional notions of privity. Chicago, Rock Island & Pac. Ry. v. Schendel, 270 U.S. 611, 46 S.Ct. 420, 70 L.Ed. 757 (1926); see Privett v. United States, 256 U.S. 201, 41 S.Ct. 455, 65 L.Ed. 889 (1921).

But if these cases are considered—as they should be—as confined to res judicata or collateral estoppel principles they do not furnish any answer to the question of the effect which the Act requires the Secretary to give to a prior state court adjudication as to the status of an applicant for social security benefits. To answer that question we must look to the specific provisions of the Act in which Congress laid down the tests and standards the Secretary is required to follow.

Congress has frequently provided that state law is determinative of the ingredi-

---

[1.] Ohio requires clear and convincing evidence (1) that the parties cohabited as husband and wife, (2) that the community regarded them as married, and (3) that the parties concluded a present agreement to enter into the marital relationship. E.g., Holmes v. Pere Marquette Ry., 28 Ohio App. 297, 162 N.E. 675 (1927); Howard v. Central Nat'l Bank, 21 Ohio App. 74, 152 N.E. 784

(1926); Umbenhower v. Labus, 85 Ohio St. 238, 97 N.E. 832 (1912); Eagleson v. McKee, 33 N.E.2d 417 (Ohio Ct.App. 1940) (per curiam); Moynahan, Common-Law Marriage in Ohio, 5 Ohio St. L.J. 26, 175 (1939). The examiner found that Carmen failed to prove before him that she and William entered into a present agreement of marriage in Ohio.

ents upon which federal rights depend. See generally Hart & Wechsler, The Federal Courts and the Federal System, 456–57 (1953). But in the Social Security Act it has gone farther and has laid down a specific standard to be applied by the Secretary in ascertaining the state law relevant to the question of status. Thus the crucial basis for a determination of widow's status under § 216(h) (1) (A) of the Act is whether the "courts of the state" of the deceased wage earner's domicile "would find" that the wage earner and the applicant were validly married at the time of death. The standard is *not* what the Secretary himself conceives the result under state law should be or should have been.

■■ It seems to me beyond cavil that the initial inquiry of the Secretary as to what the courts of the state "would find" with respect to an issue of marital status must necessarily focus upon whether or not the courts of the state have already made an adjudication on that precise issue. If, as here, the state courts have decided the issue the Secretary cannot summarily disregard that adjudication and proceed to re-decide de novo the issue of status. He cannot ignore what the state courts already determined on the spurious ground that he was not a party to the proceedings.

■■ On the contrary, by any reasonable interpretation the literal terms of the statute require the Secretary to give full force and effect to a state court adjudication of marital status unless extraordinary facts and circumstances are shown which under the law of the state would impel the state courts to "find" that the prior adjudication should be given no force and effect.[2] The Secretary may disregard a state court adjudication only when it is shown that on the

evidence adduced before him the courts of the state would refuse to give force and effect to the prior adjudication in appropriate proceedings under state law. He may not do so on the theory that the courts of the state made a mistake or should have interpreted or applied their law differently.

In the case at bar the Secretary gave no effect to the adjudication by the New York Surrogate's Court that Carmen was William's "wife" and "widow." Yet there is no evidence in the record before the Secretary to impeach the New York decree. There is nothing remotely suggesting fraud, collusion, mistake of fact, newly discovered evidence, or other ground which on any sound theory would induce a New York court to set aside the decree on direct or collateral attack. E. g., N.Y.Surrogate's Court Act § 20(6); Fisher v. Fisher, 253 N.Y. 260, 170 N.E. 912, 170 N.E. 912, 69 A.L.R. 918 (1930); In re Nelson's Estate, 26 Misc.2d 471, 209 N.Y.S.2d 344 (Surr.Ct.1961), aff'd, 15 App.Div.2d 932, 225 N.Y.S.2d 982 (2d Dep't 1962); In re Droney's Estate, 231 App.Div. 674, 248 N.Y.S. 449 (4th Dep't 1931); In re Minard's Will, 35 N.Y.S.2d 457 (Surr.Ct.1942); In re Hayden's Estate, 176 Misc. 1078, 29 N.Y.S.2d 852 (Surr.Ct.1941); cf. N.Y.C.P.L.R. Rule 5015(a) (2), (3).

■ A decree of the Surrogate's Court is entitled to the respect given a judgment of a New York court of general jurisdiction. N.Y.Surrogate's Court Act § 80. The issue as to the marital status of William and Carmen was directly posed and fully litigated in the Surrogate's Court proceeding. The action was commenced by William's brother, the administrator of the estate, against Carmen to discover the assets remaining in the home she kept with William. William's

---

2. The vulnerability of a state court adjudication to successful attack in the state courts will, of course, vary with the varying law of the individual states. Proof of fraud or collusion would make an adjudication vulnerable to subsequent attack in most states. In some states a probate court is not a court of record but a quasi-administrative body whose decrees may not have a binding effect. Other factors might lead the courts of the state to set aside or disregard a prior adjudication as to status. Since none of such factors are present here it is unnecessary to discuss further the various possibilities.

brother was hostile to Carmen. Both sides were represented by counsel. After hearing the testimony of Carmen, William's brother, and William's mother, the Surrogate found that William and Carmen entered into a valid common law marriage in Ohio; and he "Ordered, Adjudged and Decreed" that "Carmen Collins was the wife of William A. Collins, decedent" and therefore was his widow.

Nevertheless, four years later the trial examiner undertook to retry the issue of marital status. He concluded that the New York Surrogate committed error and should have arrived at the opposite result. The examiner reached this conclusion without even hearing all the witnesses who testified in the New York proceeding. In fact, the only testimony before him was that of Carmen herself, whose native tongue was Spanish and whose ability to express herself in the niceties of English necessary to make out a technical case of common law marriage in Ohio was obviously very limited.

What happened in this case emphasizes the evil of permitting the Secretary under § 216(h) (1) (A) to try de novo an issue of status already tried and determined by a state court of competent jurisdiction. The Act does not contemplate that the Secretary substitute his own opinion for that of a state court far better qualified to undertake a determination of the question. Rather, the Act directs that the Secretary's decision as to whether Carmen was William's widow should be governed by what the courts of the state of domicile "would find" on that question. Under the circumstances of this case the Secretary erred in failing to give full effect to the New York decree and in refusing to determine Carmen's status accordingly.[3]

Analogies in the tax field where federal statutes often adopt state law concepts [4] support the interpretation given to the Social Security Act here. The Internal Revenue Bureau has not been permitted to ignore state judgments which are relevant and probative in determining the proper application of the federal tax law. The cases, fairly synthesized, indicate that "the federal courts have usually accepted the state decree unless its collusive nature appeared on its face." Cahn, Local Law in Federal Taxation, 52 Yale L.J. 799, 818 (1943); e. g., Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465 (1937); Helvering v. Rhode's Estate, 117 F.2d 509 (8 Cir. 1941). Although the state decree has "not the effect of *res judicata*, and could not furnish the basis for invocation of the full faith and credit clause," it nevertheless "furnishes the standard" for federal tax purposes. Freuler v. Helvering, 291 U.S. 35, 43, 54 S.Ct. 308, 311, 78 L. Ed. 634 (1934).

The policies reflected in the Social Security Act also support the interpretation adopted here. It is plain from the language of § 216(h) (1) (A) that the interests of a state represented in its determination as to status of a widow, wife, husband or child were thought to be essentially identical with the federal interests in defining the same family relationships. Cf. Board of Commissioners

3. There is nothing in the cases holding that the Secretary is not bound under rules of res judicata or collateral estoppel by state court adjudications to which he was not a party (see P. 40, supra) which militates against this conclusion. Not one of them involved a contested proceeding in which the issue before the Secretary had been fully litigated in a prior adversary proceeding before a court of record. Without indicating that I agree with the conclusions reached in all of these cases each involved circum-

stances markedly distinguishable from the case at bar.

4. Note that the reference to state law in Federal tax legislation usually rests upon implication, see Helvering v. Stuart, 317 U.S. 154, 161, 63 S.Ct. 140, 87 L. Ed. 154 (1942); United States v. Pelzer, 312 U.S. 399, 402–403, 61 S.Ct. 659, 85 L.Ed. 913 (1941); cf. De Sylva v. Ballentine, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956), whereas Section 216(h) (1) (A) expressly directs the Secretary to find as the state courts "would find."

of Jackson County, Kan. v. United States, 308 U.S. 343, 351–352, 60 S.Ct. 285, 84 L.Ed. 313 (1939). Compare Kilborn v. Ribicoff, 205 F.Supp. 630, 635 (S.D.Ala. 1962), aff'd sub nom, Celebrezze v. Kilborn, 322 F.2d 166 (5 Cir. 1963); Nott v. Folsom, 161 F.Supp. 905 (S.D.N.Y. 1958). Specifically in § 216(h) (1) (A) Congress directed that the distribution of a decedent's Social Security benefits depends upon what the state courts would determine as to the proper distribution of his personal property.[5] Thus those considered by a state through its courts to be the deserving beneficiaries of a decedent's personal effects were also considered by the federal government to be the appropriate recipients of social security benefits. In short, what was right for the state was right for the federal government. This makes sense, for in each case the ultimate objective is to provide for the natural objects of the decedent's bounty. So viewed, the result reached by the Secretary was precisely the opposite of what Congress intended to achieve under the Act.

Moreover, the conclusion adopted here is in full accord with the broad remedial objectives of the Social Security Act. The Act was designed to alleviate economic distress among those who depended upon the wage earner for their support. See Sparks v. United States, 153 F.Supp. 909, 912 (D.Vt.1957); Stuart v. Hobby, 128 F.Supp. 609, 610 (S.D.N.Y.1955); Note, Effect of State Marital Laws on "Widow's" Benefits Under the Social Security Act, 1 San Diego L.Rev. 76 (1964). As remedial legislation it should receive a liberal interpretation. See, e. g., Schroeder v. Hobby, 222 F.2d 713 (10 Cir. 1955); Sparks v. United States, supra. Very frequently, however, disregard of an unimpeachable state decree is a prelude to a finding that the decedent has left no

qualified spouse for purposes of the Social Security benefits. See Miller v. Ribicoff, supra; Marek v. Flemming, supra; Patten v. Flemming, supra. Yet, as Judge Holtzoff aptly observed in Schmiedigen v. Celebrezze, 245 F.Supp. 825, 827 (D.C.1965):

"the payments prescribed by the [Social Security Act] are not gratuities or matters of grace; they are not public assistance; they are not welfare payments. On the contrary, the law created a contributory insurance system, under which what in effect constitute premiums are shared by employees and employers. Consequently, in spirit at least, if not strictly and technically, the employee, who throughout his working life has contributed part of the premiums in the form of deductions from his wages or salary, should be deemed to have a vested right to the payments prescribed by the statutory scheme, which in effect comprises the terms of his insurance policy. He has earned the benefits; he is not receiving a gift. One of the proceeds of the insurance is the modest payment due to the surviving spouse upon the death of an insured individual. If that payment is not made, the money lapses into the Treasury. It would seem fair and equitable, therefore, to place a liberal and broad construction upon these provisions of law, in order to prevent such a frustrating and unjust result."

Here the Secretary's determination has resulted in depriving the natural objects of the wage earner's bounty of the benefits earned and paid for by the wage earner during his lifetime. Carmen is William's widow under New York law

---

5. It may be noted that in 1960 Congress amended 42 U.S.C. § 416(h) (1) to authorize the Secretary to award benefits where the claimant would qualify under the state law of intestate distribution, even though she would not be deemed a widow. 74 Stat. 924 (1960).

as determined by its courts. Deborah is their child.[6] According to the record before the examiner, Carmen and Deborah are now supported by relief given by the local authorities. Under the Secretary's determination benefits which the wage earner earned and paid for have been swallowed by the Federal Government in its munificence. The result reached in this case has no justification either in law or in equity.

■ I hold that the beneficial and protective intendment of the statute no less than its literal terms dictates the conclusion that a state court determination of marital status shall be the measure of federal rights under the Social Security Act, as well, except upon proof of extraordinary facts and circumstances which would impel the state courts to sustain an attack upon the previous finding. This rule will best afford stability to those who are least able to protect their own interests. It will promote uniformity in the state and federal determinations of an individual's marital status, a result which Congress intended to achieve under the Act. And, most important, it will help to assure that deserving dependents receive the benefits to which they are justly entitled.

■ On the facts of this case the New York probate decree conclusively establishes that the plaintiff Carmen Collins is the widow of the deceased wage earner for purposes of the Social Security Act. It follows that the plaintiff Deborah Collins is a child under 42 U.S.C. § 416(h)(2). Both claimants are thus entitled to benefits. 42 U.S.C. § 402(g).

Plaintiff's motion for summary judgment is granted, and the Government's cross-motion for summary judgment is denied. The decision of the Secretary is reversed and the case remanded solely for a determination of the claimants' benefits.

Judgment will be entered accordingly.

It is so ordered.

---

6. It may be noted that Carmen has cared for and supported two other children of the wage earner.