TILLMAN PEARSON, Judge.
The county judge has ordered that the property of Jacob Tim escheat to the State of Florida. This appeal is from that order and we reverse upon the holding that as against the state certain heirs have proved their relationship.
The story of Jacob Tim is an American odyssey. Its counterparts have inspired thousands to immigrate to America. He was born in Brest-Litovsk, Russia in 1872; came to America as a penniless youth of 17 and died in the Sherry Frontenac Hotel on Miami Beach, Florida. He was a very rich man.
Somewhere along the journey, he decided to travel alone. He never married. He recognized no relative and often declared that he had none. He left no will.
The order appealed was made pursuant to § 731.33, Fla.Stat., F.S.A.[1] It sets forth, the basis of the trial judge’s conclusion:
“The decedent was born in Brest-Litovsk, Russia (formerly known as Grodna, Poland) on or about August 17, 1872 under the name of Timiansky, and emigrated to this country in 1889. Decedent lived in New York City for many years thereafter and founded a business known as Tim’s Cap Corporation. The business was located at 354 West 17th Street for many years and up to its dissolution and liquidation in 1933. At that time the liquidated assets were transferred to a corporation known as J. T. Corporation. The decedent was sole stockholder, director and President of the J. T. Corporation, a Delaware Corporation. All assets constituting the estate of the decedent being administered by this Court were derived from this corporation. j
“The respective claimants have filed herein answers to the Administrator’s Petition for Determination of Heirs, alleged family trees, and proferred evidence, all of which the Court has considered and weighed in an attempt to find facts which might in some degree substantiate the claim of one or more *42 claimants. Even with such consideration the Court finds that while a similarity of names, religion and nativity has been shown by a number of claimants, this is not sufficient to establish relation by blood or affinity.
“The Court finds that on the whole the evidence submitted by each claimant or each group of claimants is insufficient to establish a relation with the decedent by blood or affinity.
“In this connection, and in passing, this Court is not unaware of the findings of the Surrogate’s Court in the New York proceedings handed down on December 21, 1956; suffice it to say that the New York Surrogate himself expressed doubts as to the admissibility of the crucial evidence due to the requirements necessary to overcome the objection of the Hearsay Rule; it is evident from the Surrogate’s findings that the Surrogate had to make certain inferences, assumptions and take judicial notice of factors which this Court does not believe justified or warranted under the evidence submitted; accordingly, this Court cannot arrive at the same conclusions as the Surrogate of New York.
“This Court also had the benefit of substantial evidence and testimony which was not introduced before the Surrogate in the New York proceedings, and further certain claimants offering evidence in these proceedings were not claimants in the New York proceedings.
“Considering the record in its entirety including the testimony, transcripts, depositions and evidence submitted to this Court, it is clear that there were more than one and perhaps many unrelated Timiansky families residing in Brest-Litovsk prior to the turn of the century, and at the time the decedent resided there. There is a similarity of names, religion and nativity, but this is not sufficient evidence upon which this Court may base a determination and finding that any of the claimants are related by blood or affinity with the family of the decedent. And this is especially true in a case of this nature where the decedent came to this country as a very young man in 1889, alone and without family accompanying him, who never married as near as can be ascertained, and about whom substantial evidence does exist as to his propensity to deny being related to anyone, as to his steadfast contention expressed to those with whom he was closely associated denying the existence of any relatives or occasionally making conflicting statements as to pedigree, not helpful here.
“It is the further opinion of this Court that to determine heirship on the basis of the record and evidence presented may do irreparable injustice in this case whereas by escheat any person claiming to be entitled to the property of the decedent may, at any time within the permitted period, reopen the administration and assert and prove his rights.”
Notice of appeal was filed by Fishel Rudawski, Liza Kahane, Jacob (Roden) Rudawski, Jacob Timiansky and Zorah Timiansky, who will be hereafter referred to as the “Rudawski Group.” A joinder in appeal was filed by Sophie Kovner, Sara Bernard, Anna Wachtel, Rose Hechler, Becky Fine and Mary Bernard, designated here as the “Bernatsky Group”.
Another group of claimants, designated here as the “Timiansky Group”, were named appellees and have filed cross-assignments of error. Other claimants named ap-pellees have filed briefs asserting error and urging that the appellants are not the heirs and that the evidence establishes that they are the heirs of the deceased. In addition, we have had the benefit of a brief of Thomas H. Wakefield, a member of the bar, as guardian ad litem for unknown heirs, *43 who joined with the Attorney General of the State of Florida in urging the affirmance of the order appealed.
It is a well-settled principle that es-cheat is not favored by the law. Any doubt as to whether property is subject to escheat will be resolved against the state. See cases collected at 19 Am.Jur. Escheat § 14 (1939); 30 C.J.S. Escheat § 16 (1942). It has been said that “* * * [T]he party claiming must prevail by the strength of his own title not by the weakness of that of his adversary. * * * The ordinary rational as well as the legal presumption as to every person is, that he must have some relatives and consequently some heirs, however remote, and whether known to him or not. * * * ” University of North Carolina v. Harrison, 90 N.C. 385 (1884).
The language of § 731.33(3), Fla.Stat., F.S.A., sets forth the determination that must be made for a finding that property escheats to the State. This subsection begins: “If the county judge determines in such proceeding that there is no person entitled to the property * * We conclude that the finding of the trial judge that the property and estate of Jacob Tim, deceased, escheats to the State of Florida is not supported by this record. There is upon the record no doubt that Jacob Tim has heirs. Indeed, the trial judge placed his decision upon the difficulty and possible injustice of determining who they are.
Having reached the decision that the record will not support a finding that the property should escheat to the State of Florida, we turn to the contentions of the parties to the appeal that the county judge erred in failing to find that they had proved heirship. Reference was made in the trial judge’s order to the opinion of the Surrogate’s Court, New York County, New York in this same estate. The opinion is reported at In Re Tim’s Estate, 6 Misc.2d 47, 159 N.Y.S.2d 520 (Surr.Ct.1956).
The relitigation of some of the same claims (not all the claimants before the Florida Court were parties to the New York proceeding) occurred here because of unusual circumstances. Jacob Tim died intestate in Miami Beach, Florida. Administration proceedings were instituted in both Florida and New York. A dispute as to domicile resulted in an action at law in New York between the two administrators. As a result of the litigation, a stipulation was entered into between the Florida Administrator and the New York Administrator wherein it was agreed that after the payment of certain expenses of the last illness and burial of the deceased, one-half of the decedent’s estate would be administered by the Florida Administrator and the other half would be administered by the New York Administrator. This stipulation was approved by the New York Court and by the Florida Court. By the stipulation the Florida Administrator received approximately $280,000 in cash. The question of domicile of Jacob Tim was never settled between the State of New York and the State of Florida.
The New York proceedings went to trial for a determination of the heirs of Jacob Tim. That trial culminated in the opinion of Mr. Surrogate Collins, cited above. Thereafter, the record of the New York proceedings was admitted into evidence in the administration of the estate in Dade County, Florida. Additional testimony, depositions, and evidence were also presented.
The County Judge of Dade County found that Florida was the domicile of the decedent. This finding is not questioned on this appeal. Therefore, insofar as the Florida courts are concerned, Florida is the proper forum to determine heirship of personal property, and such determination is not bound by the law of a sister state.
The appellants (Rudawski Group) urge that the New York order is binding upon the trial court in these proceedings. We cannot agree with the above contention. A primary basic proposition of law *44 with universal application is that upon the determination of the heirs of the deceased by a court of competent jurisdiction in the domicile of the deceased, such heirs take the personal tangible and intangible property of the deceased wherever its situs may be. See cases collected at 11 Am.Jur., Conflicts of Law, § 82 n. 8 (1937).
Guided by the several briefs, we have examined the evidence submitted to prove heirship.
Fishel Rudawski, Liza Kahane and Jacob (Roden) Rudawski contend that Jacob Tim, formerly know as Jacob Timiansky, was the brother of Sarah Feige Rudawski, nee Timiansky; that Sarah Feige was the mother of their father Gedalia; and therefore, they are the grandniece and grandnephews of the decedent.
Jacob and Zorah Timiansky contend that the deceased, Jacob Tim, was the brother of their father, Aron Timiansky; and therefore, they are nephews of the deceased.
As already set forth, Jacob Tim died in 1954 at the age of 82. He had formerly been engaged in the cap-manufacturing business in New York City.
Mr. Elias Israel, a disinterested witness, testified that while employed as a cap maker in New York City in 1889 or 1890, a man named Jacob Timiansky came to work in the same shop. Mr. Israel described Jacob Timiansky’s physical characteristics. He also indicated that Timiansky had immigrated to this country about 1889 from Brest-Litovsk. Many years later, Mr. Israel again met, on various occasions, the same Jacob Timiansky who then called himself Jacob Tim.
Fishel, Liza and Jacob Rudawski were born in Brest-Litovsk. For the early part of their lives, they lived with their father and mother, Gedalia and Rachel Rudawski, and their paternal grandmother, Sarah Feige Rudawski, nee Timiansky.
Mrs. Dina Ginzburg, a disinterested witness, testified she had known Sarah Feige Rudawski, nee Timiansky, as a young girl. Mrs. Ginzburg stated that while visiting Sarah Feige’s home she had met Samuel Timiansky, Sarah Feige’s father, and Jacob Timiansky, Sarah Feige’s brother. She also had knowledge of Jacob’s trip to the United States and was present at Sarah Feige’s home when a letter was received from Jacob announcing his arrival in America. Mrs. Ginzburg indicated that Jacob was about 16 or 17 years old at the time of his trip to America. She also gave a description of Jacob’s physical appearance which was consistent with the description given by Mr. Israel.
There was evidence to indicate that the decedent’s father, Samuel Timiansky, had other children, including a son named Aron Timiansky. Mrs. Rachel Chwoinek testified that at the wedding of her sister to Aron Timiansky she was introduced to Samuel Timiansky as Aron’s father.
Passport applications sworn to by Jacob Tim establish that the decedent stated under oath that he was born in Brest-Litovsk in 1872, that he immigrated to the United States from Europe in 1889; that his father’s first name was “Samuel” and that he was engaged in the cap-manufacturing business in New York City. The applications give a physical description of the decedent which corroborates descriptions given by witnesses Israel and Ginzburg.
There is other evidence to support the claim of this group but we believe that the foregoing is sufficient to outline the basis of the claim that Jacob Timiansky, who changed his name to Jacob Tim and who died in Miami Beach, Florida, is one and the same person as the Jacob Timiansky who was the uncle of Jacob and Zorah Tim-iansky and the granduncle of Fishel, Jacob and Liza Rudawski.
It should be noted that in the main the testimony introduced by the various groups is not conflicting. Each group attempted to establish a common ancestor. We cannot say that the evidence supporting the *45 claims of the appellants (Rudawski Group) is exclusive of other heirs, but none of the other claimants have met the degree of proof required.
We, therefore, hold that the county judge erred when he failed to find that Fishel Rudawski, Jacob (Roden) Rudawski and Liza Kahane had established their status as grandnephews and grandniece, respectively, of Jacob Tim the deceased. Further, we hold that Jacob Timiansky and Zorah Timiansky established their status as nephews of the deceased. As to the other claimants, we affirm the finding of the county judge. Accordingly, the order appealed is reversed and the cause remanded with directions to enter an order in accordance with the views herein expressed.
Reversed and remanded.

. Section 731.33(1) :
“Whenever any person dies leaving property and without being survived by any person entitled to the same, sucli property shall escheat to the state.”